*In re* HRC

Docket Nos. 290213 and 290214. Submitted October 6, 2009, at Detroit. Decided December 15, 2009, at 9:15 a.m.

The Monroe Circuit Court, Family Division, Pamela A. Moskwa, J., entered an order terminating the parental rights of Rosie Lee Compton and Ronnie Compton, Sr., to eight minor children. The Department of Human Services had petitioned to have the parental rights terminated on the basis of sexual abuse, physical abuse, and educational neglect. The respondents appealed separately, and the appeals were consolidated.

The Court of Appeals *held*:

1. A trial court presiding over a juvenile matter may not conduct in camera interviews, on any subject whatsoever, with the child. The trial court erred by conducting in camera interviews with the children for the purpose of determining their best interests. The error affected the respondents' substantial rights. The use of the unrecorded, in camera interviews in the termination proceedings violated the respondents' due process rights. The portion of the trial court's opinion and order pertaining to its best interests determination must be vacated and the case must be remanded for new findings, by a different judge, regarding the children's best interests.

2. The respondents do not have standing to challenge the effectiveness of the counsel that represented one of their children.

3. The trial court did not err by finding at least one statutory ground for termination as to both Rosie and Ronnie on the basis of evidence establishing that Ronnie sexually abused at least two of his daughters and Rosie failed to protect the children from the sexual abuse despite knowing about it. This part of the trial court's opinion and order must be affirmed.

4. If the petitioner erred in failing to provide a case services plan and reunification efforts, the error was harmless under the facts of this case.

5. There is no evidence that the jury failed to follow the instructions given by the trial court.

Affirmed in part, vacated in part, and remanded.

1. CONSTITUTIONAL LAW — JUVENILE PROCEEDINGS — IN CAMERA INTERVIEWS —
   DUE PROCESS.

   The use of an unrecorded, in camera interview of children in the
   context of a juvenile proceeding, for whatever purpose, constitutes
   a violation of the parents' fundamental due process rights; a trial
   court presiding over a juvenile proceeding has no authority to
   conduct in camera interviews of the children involved.

2. PARENT AND CHILD — CHILD PROTECTIVE PROCEEDINGS — EFFECTIVE ASSIS-
   TANCE OF COUNSEL.

   The respondent in a child protective proceeding does not have
   standing to challenge the effectiveness of the child's attorney.

3. PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — SERVICE PLANS —
   REUNIFICATION SERVICES.

   When a child is removed from the parents' custody, the petitioner
   must make reasonable efforts to rectify the conditions that caused
   the child's removal by adopting a service plan; the petitioner is not
   required to provide reunification services when termination of
   parental rights is the agency's goal.

*William P. Nichols*, Prosecuting Attorney, and
*Michael C. Brown*, Assistant Prosecuting Attorney, for
the Department of Human Services.

*Lambrix & Bartlett, PLC* (by *James P. Bartlett*), for
Rosie Lee Compton.

*LaVoy & Zagorski, P.C.* (by *Jill M. LaVoy*), for Ronnie
Compton, Sr.

Before: K. F. KELLY, P.J., and JANSEN and FITZGERALD,
JJ.

K. F. KELLY, P.J. In these consolidated appeals of an
order terminating parental rights we must decide
whether a trial court presiding over a juvenile proceed-
ing may conduct unrecorded, in camera interviews of
the minor children when considering whether termina-
tion is in their best interests. See MCL 712A.19b(5).
The trial court made no ruling on this issue and

respondents now appeal as of right the order terminating their rights to the children and raise other additional grounds for relief. We hold that a trial court presiding over a juvenile proceeding has no authority to conduct in camera interviews of the minor children. Accordingly, we vacate the trial court's findings regarding the children's bests interests and remand for further proceedings consistent with this opinion.

## I. BASIC FACTS AND PROCEDURAL HISTORY

The family involved in these proceedings has a protracted history with protective services. Before the petition was filed in the instant matter, the family had been referred to protective services 24 times. These referrals concerned allegations of physical abuse, truancy, or physical and educational neglect. Physical abuse was suspected because the male children often had bruises, while physical neglect was suspected because the children often came to school improperly dressed or having poor hygiene. In addition, the children missed school often, approximately 20 to 30 days a year, and arrived to school late without excuses. There were also ongoing concerns regarding suspected medical and educational neglect of one child, SHC, who was deaf and had very little knowledge of American Sign Language (ASL).

On May 30, 2008, the oldest child, SRC,[1] ran away from home after her father, Ronnie, had grounded her. When the police found the child, she told an officer that Ronnie had physically and sexually abused her. SRC did not reveal, at the time, that she had fought with Ronnie and her mother, Rosie. On June 1, 2008, the officer interviewed SRC's younger sister, HRC, who also al-

[1] By the time this matter went to trial, SRC had reached the age of majority.

leged that Ronnie and David, one of Ronnie's adult sons, had sexually abused her. Consequently, petitioner obtained a court order requiring that the children be removed from respondents' home. Respondents, however, fled the state with their children. The children were eventually found in Indiana, at their grandmother's house. Petitioner removed the children and had them placed in foster care.[2] On June 11, 2008, petitioner filed a petition to terminate respondents' parental rights on the basis of sexual abuse, as well as allegations of physical abuse and educational neglect.

Before the adjudication hearing on July 24, 2008, however, petitioner learned that SRC had reported the sexual abuse when she was mad at her parents and also that HRC had recanted her allegations that Ronnie had sexually abused her. Accordingly, at the hearing, petitioner decided not to pursue termination of respondents' parental rights, but only sought temporary custody of the children, in exchange for respondents' pleas admitting the physical abuse and educational neglect. Rosie admitted the educational neglect and Ronnie admitted both the educational neglect and physical abuse. As part of the plea agreement, respondents agreed that visitation would be suspended until each respondent had a psychological evaluation. The trial

---

[2] HRC and AMC were placed together; REC, PLC, and KEC were placed together; and, WSC and TMC were placed together but their placement frequently changed. Petitioner had some difficulty finding the best placement for SHC because of his special educational needs. Initially, SHC was placed in the St. Louis Center, a residential care facility for children with developmental disorders. The center, however, was not the most suitable placement for SHC because the center was geared toward children that functioned at a lower level. The opportunities for SHC were explored over the course of the proceedings and it was recommended that he be placed with deaf foster parents. However, at the time of the termination hearing, he remained at the center while preparations for his placement with that family were being made.

court accepted the pleas and asserted jurisdiction over the children. Sibling visits were ordered.

The initial dispositional hearing was held on August 13, 2008, but the psychological examinations of respondents had not been completed. Thus, the hearing was continued to August 28, 2008. At that hearing, petitioner indicated that it would be refiling a termination petition because it had received new evidence regarding the sexual abuse. Petitioner renewed its petition to terminate respondents' parental rights on September 5, 2008, and the trial court authorized that petition. In response, respondents moved to withdraw their plea agreements.

Petitioner then filed an amended petition on September 22, 2008. It alleged that Ronnie had sexually abused SRC, HRC, and KEC, that David had also sexually abused HRC and KEC, and that Rosie had failed to protect the children from the sexual abuse despite knowing about it. Petitioner also alleged that Ronnie had physically abused the children and that respondents had failed to provide the children with proper education and proper hygiene. In addition, petitioner claimed that respondents had failed to provide proper medical care for SHC, whose cochlear ear implant required regular medical examination in order to prevent infection. Respondents' alleged failure to take SHC to these appointments had exposed him to serious health risks. Petitioner also alleged that SHC had suffered educational neglect because he knew very little ASL and had no effective way of communicating.

Subsequently, the trial court granted respondents' motions to withdraw their pleas and also excluded the psychological evaluations conducted in conjunction with the plea agreements. Respondents exercised their right to a jury trial on the question of jurisdiction and a

trial began on October 21, 2008. After hearing the testimony of the witnesses, the jury returned a verdict finding that the statutory grounds for jurisdiction under MCL 712A.2(b) had been proven by a preponderance of the evidence as to HRC, AMC, REC, PLC, SHC, WSC, TMC, and KEC.

Before making a decision on termination, the trial court heard testimony from each child's counselor regarding whether termination was in each child's best interests, as well as from respondents. On November 25, 2008, the trial court found that the statutory grounds for termination under MCL 712A.19b(3)(b)(*i*) and (*ii*), (j), and (k)(*ii*) and (*iii*) had been proven by clear and convincing evidence.[3] However, the trial court, noting the strong ties between the parents and siblings, stated, "[T]he Court is not prepared to terminate today." The trial court then reserved its ruling on termination and ordered:

> The sibling visits will continue. The Court will order that DHS provide an opportunity for the — for [HRC, AMC, REC, and PLC,] . . . in their individual therapy sessions, to have a meeting with their parents.
>
> * * *
>
> [A]nd I am going to want to review the matter in about thirty days and hear from the therapists, and the Court will also conduct interviews with the children in chambers, of those four children. At that point, the Court will decide whether to make such an attempt with regard to the younger [four] children . . . .

Petitioner moved for reconsideration of this order on the basis that joint counseling could cause psychological

---

[3] The trial court found that petitioner had failed to show by clear and convincing evidence that SHC had been medically neglected under MCL 712A.19b(3)(g).

trauma and interfere with the pending criminal investigation of Ronnie's sexual assaults. The trial court stayed the order for joint counseling and proceeded with off the record, in camera interviews of all the children. Subsequently, on January 15, 2009, the trial court terminated respondents' parental rights to all the children. It stated, "The Court having considered the testimony and also the subsequent interviews of the children and all of the record as a whole, the Court finds that termination of parental rights is in the best interests of the children . . . ." Respondents appealed separately, and their appeals were consolidated.

## II. DUE PROCESS

Respondents first argue that the trial court erred by conducting in camera interviews of the children in making its best interests determination, thereby violating their due process rights. Specifically, respondents contend that Michigan law permits in camera interviews of children only for the limited purpose of determining a child's parental preference in the context of a custody dispute. We agree. Because respondents did not object to the trial court's decision to conduct the interviews, our review is for plain error affecting substantial rights. *Wolford v Duncan*, 279 Mich App 631, 637; 760 NW2d 253 (2008). Further, whether the court's decision to conduct an in camera interview violated respondents' due process rights presents a question of constitutional law that we review de novo. *In re Rood*, 483 Mich 73, 91; 763 NW2d 587 (2009).

### A. IN CAMERA INTERVIEWS

An understanding of the in camera interview's use in the context of familial disputes will inform our decision.

Thus, before addressing respondents' argument, we first consider the in camera interview's purpose and its due process implications.

An in camera interview is an ex parte communication that occurs off the record in a judge's chambers and in the absence of the other interested parties and their attorneys. See Black's Law Dictionary (8th ed). Generally, such ex parte communications are not permitted except as provided by law. Michigan Code of Judicial Conduct, Canon 3. In most circumstances, the in camera interview, or review, is reserved for purposes of determining whether certain evidence or testimony is admissible during the proceedings. See, e.g., MRE 612 (permitting in camera review to redact irrelevant material from documentary evidence); MCR 6.201 (allowing in camera review to excise privileged material); *Davis v O'Brien*, 152 Mich App 495, 505; 393 NW2d 914 (1986) (requiring in camera review to redact privileged material).

The Child Custody Act (CCA), MCL 722.21 *et seq.*, permits the use of in camera interviews, but for a different reason: When the court makes its best interests determination, it is well settled that it may interview the children in camera limited to determining their parental preferences.[4] See, e.g., *In re Leu*, 240 Mich 240, 245-246; 215 NW 384 (1927); *Burghdoff v Burghdoff*, 66 Mich App 608, 612; 239 NW2d 679 (1976); *Molloy v Molloy*, 247 Mich App 348, 350; 637 NW2d 803 (2001); *Surman v Surman*, 277 Mich App 287, 297-298; 745 NW2d 802 (2007); see also MCR

---

[4] While no provision of the CCA explicitly permits the use of an in camera interview, MCL 722.23(i) does require a court to specifically consider a child's parental preference, which is but one factor a court must consider when making its best interests determination. The court's authority to conduct the in camera interview derives from this factor, and the well-established caselaw.

3.210(C)(5). And, although the judge is limited in his or her line of questioning, the rules of evidence do not apply. MRE 1101. The purpose behind this practice is to reduce "the emotional trauma felt by a child required to testify in open court or in front of his or her parents," *Molloy, supra* at 352, and to relieve the child of having to openly choose sides, *Gulyas v Gulyas*, 75 Mich App 138, 144-145; 254 NW2d 818 (1977).

A court's concern for a child's well-being in a custody proceeding, however, must not outweigh considerations of fundamental fairness in proceedings that affect parental rights. *Molloy, supra* at 352. While questioning in an in camera interview does not constitute a due process violation as long as the interview is limited to the child's parental preferences, *id* at 350; *Lesauskis v Lesauskis*, 111 Mich App 811, 816-817; 314 NW2d 767 (1981), it is not difficult to see how the use of an in camera interview for fact-finding presents multiple due process problems: Should questions or answers arise concerning disputed facts unrelated to the child's preference, there is no opportunity for the opposing party to cross-examine or impeach the witness, or to present contradictory evidence; nor is there created an appellate record that would permit a party to challenge the evidence underlying a court's decision. *Molloy, supra* at 360; *Foskett v Foskett*, 247 Mich App 1, 10-11; 634 NW2d 363 (2001). And, as this Court has noted, even an interview limited appropriately in its scope, "will result in information that affects other child custody factors . . . ." *Molloy, supra* at 353. Nonetheless, this Court has concluded that due process, in the context of custody disputes, permits in camera interviews of children for the limited purpose of determining their parental preference. *Id*. at 350.

Under the juvenile code, MCL 712A.1 *et seq.*, termination of parental rights is appropriate when one or

more statutory grounds for termination under MCL 712A.19b(3) is proven by clear and convincing evidence and termination is in the best interests of the child. MCL 712A.19b(5). While a court in a juvenile proceeding is required to make a finding regarding the child's best interests, there is, significantly, no statutory provision that would permit a trial court presiding over a juvenile proceeding to conduct an in camera interview. Nor is there any caselaw, let alone any longstanding caselaw, that permits a trial court in a juvenile proceeding to conduct an in camera interview regarding the child's best interests. Accordingly, there is no authority that permits a trial court presiding over a juvenile matter to conduct in camera interviews, on any subject whatsoever, with the children.

### B. ANALYSIS

In the instant matter the trial court was presiding over a termination of parental rights matter and, thus, the juvenile code applied. After hearing the testimony presented by the parties during trial, as well as the testimony produced for purposes of the best interests determination, the trial court announced that it was not ready to make a best interests determination. In lieu of considering the whole record evidence and making a decision, the trial court instead opted to conduct in camera interviews of all the children. It did not indicate that the interviews would be limited to any purpose, but intended that they would be generally used to determine the children's best interests. The trial court conducted these interviews, without objection from either party, and subsequently found that termination was in the children's best interests. The court made no statements on the record reflecting the types of questions the children were asked or the evidence that was

elicited. And, there is no reviewable record whatsoever regarding what occurred during these interviews.

The court erred by conducting the in camera interviews. A trial court presiding over a juvenile matter must abide by the relevant substantive and procedural requirements of the juvenile code. See *In re AP*, 283 Mich App 574, 595; 770 NW2d 403 (2009). It is not free to pick and choose procedures from the CCA and implant them into juvenile proceedings. Stated simply, the CCA's substantive and procedural requirements are not applicable to proceedings conducted under the juvenile code. *Id.* As noted, nothing in the juvenile code, the caselaw, the court rules, or otherwise permits a trial court presiding over a termination of parental rights case to conduct in camera interviews of the children for purposes of determining their best interests. Accordingly, we hold that a trial court presiding over a juvenile proceeding has no authority to conduct in camera interviews of the children involved.

Having concluded that the trial court plainly erred, we must next consider whether that error affected respondents' substantial rights. We conclude that it did. " 'Due process applies to any adjudication of important rights.' " *In re Brock*, 442 Mich 101, 110; 499 NW2d 752 (1993), quoting *In re LaFlure*, 48 Mich App 377, 385; 210 NW2d 482 (1973). It is a flexible concept that calls for procedural protections as the particular situation demands. *In re Brock, supra* at 111. Due process requires fundamental fairness, which will involve consideration of the private interest at stake, the risk of an erroneous deprivation of such interest through the procedures used, the probable value of additional or substitute procedures, and the state or government interest, including the function involved and the fiscal or administrative burdens imposed by substitute proce-

dures. *Id.*; *Dobrzenski v Dobrzenski*, 208 Mich App 514, 515; 528 NW2d 827 (1995).

A balancing of these factors dictates the conclusion that the use of unrecorded, in camera interviews in termination proceedings violates parents' due process rights. The private interest at stake in a termination hearing is a parent's fundamental liberty interest in the care and custody of his or her child, *In re JK*, 468 Mich 202, 210; 661 NW2d 216 (2003), as well as the child's interest in his or her own proper care and custody, see *In re Clausen*, 442 Mich 648, 686; 502 NW2d 649 (1993); *Herbstman v Shiftan*, 363 Mich 64, 67-68; 108 NW2d 869 (1961). The state's interest is aligned with the child's, because it seeks the outcome consistent with the child's best interests. *Molloy, supra* at 355-356. Obviously, the stakes for the private parties involved are very high: parents stand to lose their constitutional right to the care and custody of the child forever, while the child risks the loss of the care of his or her natural parents. Further, given the characteristics of the in camera interview, the risk of an erroneous deprivation of these fundamental rights is substantial, while the value of an in camera procedure is low. Unrecorded, off the record, in chambers interviews of children could potentially unduly influence a court's decision and could affect the court's findings, not just with regard to the child's best interests, but also with regard to whether the statutory grounds for termination exist. See *id.* at 359. Not only that, but as we have already noted, such procedures provide no opportunity for cross-examination, impeachment, or meaningful appellate review. See *id.* at 360; *Foskett, supra* at 10-11. The risk of error associated with the use of the in camera interview is plainly unwarranted, especially considering the fact that the testimony elicited through such a procedure can be obtained another way at little cost to

the state or the parties involved; for example, through another witness's testimony or by documentary evidence. Accordingly, given the fundamental parental rights involved in termination proceedings, the risk of an erroneous deprivation of those rights given the in camera procedure, and the fact that the information is otherwise easily obtained, it is clear that the child's interest in avoiding the discomfort caused by testifying in open court does not outweigh the parents' interest in having the child testify on the record. Thus, it is our view that the use of an unrecorded and off the record in camera interview in the context of a juvenile proceeding, for whatever purpose, constitutes a violation of parents' fundamental due process rights.[5]

Here, after the trial court conducted its in camera interviews of all the children involved, it terminated respondents' rights to all the children. Respondents had no opportunity to learn what testimony was elicited or to counter the information obtained, and no way of knowing how that information may have influenced the

---

[5] Moreover, we note that the rationale permitting the use of in camera interviews in the context of custody disputes is simply not applicable to termination cases. In custody disputes, the courts are sympathetic to the child's well-being and employ in camera interviews to spare a child the trauma of testifying in open court regarding the child's parental preference. In a termination case, on the other hand, it makes no logical sense for a court to elicit testimony from a child regarding his/her parental preference. In most termination proceedings, the child has a choice not between parents, but between natural parents and the state. Thus, the question of parental preference is largely irrelevant in the context of a termination case. In addition, the due process test balances out differently because the interests involved, and what is at stake, are different in custody disputes. Namely, the courts of this state have found that the child's interest in avoiding openly voicing a parental preference, in light of the low likelihood of error given the limited nature of the in camera interview employed in the custody context, outweighs the parent's interest in having the testimony occur in open court. See *Molloy, supra* at 353-360; *Lesauskis, supra* at 816-817.

court's decision. In addition, the trial court's decision to use in camera interviews resulted in an inadequate record for meaningful judicial review at the appellate level. Accordingly, we conclude that the trial court's decision to interview the children in camera fundamentally and seriously affected the basic fairness and integrity of the proceedings below and the decision regarding the children's best interests must be vacated.[6] Further, because we do not know what information the trial court learned during those interviews, we cannot ascertain whether the trial court would be able to set aside any information obtained in making a new determination pursuant to MCL 712A.19b(5). Thus, in the interest of substantial justice, this matter shall be assigned to a different judge on remand, who shall make findings as to each child's best interests before deciding whether termination of respondents' parental rights is warranted. See *People v Evans*, 156 Mich App 68, 72-73; 401 NW2d 312 (1986).

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

Respondents next argue that SHC was denied effective assistance of counsel because he was not provided with an interpreter consistent with the Deaf Persons' Interpreters Act, MCL 393.501 *et seq.*,[7] and therefore his lawyer guardian ad litem was ineffective.

---

[6] Because the trial court conducted in camera interviews of the children after it found that statutory grounds for termination existed, we vacate only that portion of the trial court's opinion pertaining to its best interests determination.

[7] Specifically, respondents complain that SHC was not provided an interpreter as required by MCL 393.503(1), which provides:

> In any action before a court or a grand jury where a deaf or deaf-blind person is a participant in the action, either as a plaintiff, defendant, or witness, the court shall appoint a qualified interpreter to interpret the proceedings to the deaf or deaf-blind person, to

It is true that children have a right to appointed counsel in child protective proceedings, MCL 712A.17c(7), and that a child's attorney appointed under the juvenile code "has the same duties that any other client's attorney would fulfill when necessary." *In re AMB*, 248 Mich App 144, 224; 640 NW2d 262 (2001). In addition, although child protective proceedings are not criminal in nature, where the right to effective counsel arises from the Sixth Amendment, the Due Process Clause indirectly guarantees effective assistance of counsel in the context of child protective proceedings. *In re CR*, 250 Mich App 185, 197-198; 646 NW2d 506 (2002).

Respondents' argument, however, wrongly assumes that they have standing to challenge the alleged violation of SHC's constitutional rights. Generally, persons do not have standing to assert constitutional or statutory rights on behalf of another person. *People v Wood*, 447 Mich 80, 89; 523 NW2d 477 (1994). And, this Court has held that a respondent in a child protective proceeding lacks standing to challenge the effectiveness of the child's attorney. As this Court stated in *In re EP*, 234 Mich App 582, 598; 595 NW2d 167 (1999), overruled on other grounds 462 Mich 341 (2000):

> [C]onstitutional protections are generally personal and cannot be asserted vicariously, but rather only " 'at the instance of one whose own protection was infringed.' " A plaintiff must assert his own legal rights and interests and cannot rest his claim to relief on the legal rights or interests of third parties. Because the right to effective assistance of counsel is a constitutional one, it is personal to the child and respondent may not assert it on behalf of the child. [Citations omitted.]

---

interpret the deaf or deaf-blind person's testimony or statements, and to assist in preparation of the action with the deaf or deaf-blind person's counsel.

Accordingly, because respondents do not have standing to challenge the effectiveness of SHC's counsel, we decline to address the merits of this argument.[8]

IV. GROUNDS FOR TERMINATION

Respondents next argue that the trial court erred by finding that the statutory grounds for termination were proven by clear and convincing evidence and that termination was in the children's best interests. We disagree.

In a termination of parental rights proceeding, a trial court must find by clear and convincing evidence that one or more grounds for termination exist and that termination is in the child's best interests. *In re Hansen*, 285 Mich App 158, 161; 774 NW2d 698 (2009). We review the trial court's findings of fact under the "clearly erroneous" standard. *In re Archer*, 277 Mich App 71, 73; 744 NW2d 1 (2007). A finding is clearly erroneous if, although there is evidence to support it, we are left with a definite and firm conviction that a mistake has been made. *In re JK, supra* at 209-210. We give deference to the trial court's special opportunity to judge the credibility of the witnesses. *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989).

Here, the trial court found that clear and convincing evidence established grounds for termination under MCL 712A.19b(3)(b)(*i*) and (*ii*), (j), and (k)(*ii*) and (*iii*). Those provisions provide:

> (3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:

*   *   *

---

[8] Nonetheless, even if we were to consider this argument, it would fail. Respondents have not shown that they were prejudiced by the alleged ineffective assistance of SHC's counsel.

(b) The child or a sibling of the child has suffered physical injury or physical or sexual abuse under 1 or more of the following circumstances:

(*i*) The parent's act caused the physical injury or physical or sexual abuse and the court finds that there is a reasonable likelihood that the child will suffer from injury or abuse in the foreseeable future if placed in the parent's home.

(*ii*) The parent who had the opportunity to prevent the physical injury or physical or sexual abuse failed to do so and the court finds that there is a reasonable likelihood that the child will suffer injury or abuse in the foreseeable future if placed in the parent's home.

*    *    *

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent

(k) The parent abused the child or a sibling of the child and the abuse included 1 or more of the following:

*    *    *

(*ii*) Criminal sexual conduct involving penetration, attempted penetration, or assault with intent to penetrate.

(*iii*) Battering, torture, or other severe physical abuse.

After our review of the record, we cannot conclude that the trial court erred by finding at least one statutory ground for termination as to both Ronnie and Rosie. The evidence established that Ronnie sexually abused at least two of his daughters. Although Ronnie denied sexually abusing the children, the trial court apparently believed the testimonies of SRC and HRC, both of whom asserted that Ronnie sexually abused them. It is not for this Court to displace the trial court's credibility determination. *In re Miller, supra* at 337. Further, Ronnie's treatment of SRC and

HRC is probative of how he will treat their other siblings. *In re Powers*, 208 Mich App 582, 588-589; 528 NW2d 799 (1995). And MCL 712A.19b(3)(b)(*i*) specifically states that it applies to a child on the basis of the parent's conduct toward the child's siblings. Thus, because grounds for termination of Ronnie's parental rights were established under at least MCL 712A.19b(3)(b)(*i*), termination of his rights to all the children is proper.

We also find that clear and convincing evidence supported a statutory ground for termination as to Rosie's parental rights. Specifically, Rosie failed to protect SRC and HRC from the sexual abuse despite knowing about it. Although Rosie denied knowing about the abuse, the evidence established that Rosie gave HRC a pregnancy test when HRC was 11 years old and yelled at Ronnie after she found out that HRC was pregnant. The fact that Rosie also did not question HRC regarding who was the perpetrator, did not seek medical treatment, and did not report the incident to the authorities suggest that Rosie knew the perpetrator was either Ronnie or David and did not wish to reveal that information. Given Rosie's history of hiding the sexual abuse and failing to prevent it, we cannot conclude that the trial court erred by finding that clear and convincing evidence supported grounds for termination of Rosie's parental rights to all the children under MCL 712A.19b(3)(b)(*ii*) and (j).

Having concluded that at least one ground for termination existed, we need not consider the additional grounds upon which the trial court based its decision. See *In re Jenks*, 281 Mich App 514, 518 n 3; 760 NW2d 297 (2008). Accordingly, we conclude that the trial court did not err by finding at least one statutory ground in support of termination as to both Ronnie and Rosie. Finally, because we have vacated the trial court's best interest determination, it is unnecessary for us to consider respondents' arguments related to that issue.

V. REUNIFICATION EFFORTS

Respondents next argue that their due process rights were violated between the time that respondents entered their pleas and the second termination petition was filed because no case service plan was developed pursuant to MCL 712A.18f. We disagree. We review de novo the constitutional question whether the proceedings complied with respondents' due process rights. *In re Rood, supra* at 91.

Generally, when a child is removed from the parents' custody, the petitioner is required to make reasonable efforts to rectify the conditions that caused the child's removal by adopting a service plan. *In re Fried*, 266 Mich App 535, 542; 702 NW2d 192 (2005). MCL 712A.18f provides, in relevant part:

> (1) If, in a proceeding under section 2(b) of this chapter, an agency advises the court against placing a child in the custody of the child's parent, guardian, or custodian, the agency shall report in writing to the court what efforts were made to prevent the child's removal from his or her home or the efforts made to rectify the conditions that caused the child's removal from his or her home. The report shall include all of the following:
>
> (a) If services were provided to the child and his or her parent, guardian, or custodian, the services, including in-home services, that were provided.
>
> (b) If services were not provided to the child and his or her parent, guardian, or custodian, the reasons why services were not provided.
>
> (c) Likely harm to the child if the child were to be separated from his or her parent, guardian, or custodian.
>
> (d) Likely harm to the child if the child were to be returned to his or her parent, guardian, or custodian.
>
> (2) Before the court enters an order of disposition in a proceeding under section 2(b) of this chapter, the agency

shall prepare a case service plan that shall be available to the court and all the parties to the proceeding.

(3) The case service plan shall provide for placing the child in the most family-like setting available and in as close proximity to the child's parents' home as is consistent with the child's best interests and special needs. The case service plan shall include, but is not limited to, the following:

\* \* \*

(e) Except as otherwise provided in this subdivision, unless parenting time, even if supervised, would be harmful to the child as determined by the court under section 13a of this chapter or otherwise, a schedule for regular and frequent parenting time between the child and his or her parent, which shall not be less than once every 7 days.

Petitioner, however, is not required to provide reunification services when termination of parental rights is the agency's goal. *In re Terry*, 240 Mich App 14, 25 n 4; 610 NW2d 563 (2000); see also MCR 3.977(D). MCL 722.638(1)(a)(*ii*) mandates that petitioner seek termination of parental rights when the parents are suspected of perpetuating sexual abuse upon the minor children or their siblings and when a parent fails to intervene to eliminate that risk. Accordingly, when petitioner filed its first petition to terminate respondent's parental rights on June 11, 2008, it was not required to provide respondents with any reunification services or to provide parenting time consistent with MCL 712A.18f.

At the very first adjudication hearing on July 24, 2008, however, respondent withdrew its termination petition in exchange for respondents' pleas regarding educational neglect and physical abuse. Respondents agreed that visitation would be suspended until appropriate and until each submitted to, and completed, psychological examinations. As part of the plea agreement, petitioner also explicitly agreed to provide re-

spondents services as required by law. At the initial dispositional hearing on August 13, 2008, the psychological exams had not been completed and the hearing was continued to August 28, 2008. At the August 28th hearing, instead of presenting a reunification plan, petitioner indicated that it would be refiling its termination petition, which it refiled on September 5, 2008.

Respondents allege that petitioner was required to provide services, and allow visitation, between the time that the first petition was withdrawn and the second petition was filed consistent with MCL 712A.18f(3)(e). This argument lacks merit. Under normal circumstances, petitioner's withdrawal of its original petition would trigger the administration of services and parenting time would be required, if appropriate. However, respondents specifically agreed as part of their plea agreements that visitation would be suspended until appropriate and that the court would have jurisdiction over the children in the interim, and the agreement indicated that services would be provided. A plea agreement validly entered into binds the parties to abide by its terms. See *People v Arriaga*, 199 Mich App 166, 168; 501 NW2d 200 (1993). Thus, although services would be provided as required by law, respondents had no right to visitation as required under MCL 712A.18f(3)(e). Rather, the parties specifically agreed that visitation was not appropriate. By the time the psychological exams were completed, petitioner's goal had again become termination of respondents' parental rights and, thus, no services or visitation were required. See *In re Terry, supra* at 25 n 4.

Respondents also complain that no report was ever filed regarding the likelihood of harm to the children if never returned to their parents or if they remained separated from their parents as required by MCL 712A.18f(1). This argument also fails. When this case was

initiated, petitioner was not bound by the requirements of MCL 712A.18f(1) because its goal was termination of respondents' parental rights. And, to the extent that petitioner was required to file such a report but did not, it is our view that the error was harmless and does not require reversal. Respondents' parental rights were terminated primarily because of Ronnie's sexual abuse of the children and Rosie's failure to prevent the abuse. Thus, none of petitioner's efforts, as documented in a report as required by MCL 712A.18f(1), could have remedied the circumstances that led to termination. Accordingly, petitioner was not required to abide by MCL 712A.18f and, to the extent that petitioner was required to follow its mandate, petitioner's error was harmless.

## VI. JURY INSTRUCTIONS

Lastly, respondents contend that the jury failed to follow the trial court's instructions and that reversal of the jury's jurisdictional finding is required. We disagree. We review claims of instructional error de novo. *Burnett v Bruner*, 247 Mich App 365, 375; 636 NW2d 773 (2001). Reversal is only warranted if the failure to reverse would be inconsistent with substantial justice. *Id.*; MCR 2.613(A).

After our review of the record, it is clear that respondents mischaracterize the colloquy that occurred between a juror and the trial court. Once the jury returned to the courtroom, the following exchange occurred:

> *The Court*: Would everyone—everyone can be seated except I would ask the foreperson of the jury to remain standing. Who is our foreperson of the jury? Will you—
>
> *Juror*: We didn't pick one, but I can—
>
> *The Court*: Didn't pick one? You did not follow the Court's instructions. Okay. Nonetheless, and you are going to speak for the jury, and has the jury reached a verdict?

*Juror*: Yes, your Honor.

The trial court confirmed that five of the six jurors agreed to the verdict, then read the verdict aloud, and the juror confirmed that the verdict was correct.

Given this exchange, there is no indication on the record that the jury did not follow the trial court's substantive instructions. Rather, the record reveals that the only error that occurred was as to who would speak for the jury. The misunderstanding was clear and did not warrant further inquiry from the trial court. Thus, respondents have failed to demonstrate that the jury did not follow the court's instructions or that permitting the verdict to stand would be inconsistent with substantial justice. Reversal is not required.

### VII. CONCLUSION

Because the trial court conducted in camera interviews of the children after it found that statutory grounds for termination existed, we vacate only that portion of the trial court's opinion pertaining to its best interests determination and remand for proceedings not inconsistent with this opinion. On remand, this matter shall be assigned to a different judge, who shall make findings as to each child's best interests before deciding whether termination of respondents' parental rights is warranted.

Affirmed in part, vacated in part, and remanded for further proceedings. We do not retain jurisdiction.