# STATE OF MICHIGAN

# COURT OF APPEALS

In re OVERDORF, Minors.

UNPUBLISHED
April 23, 2015

No.  322199
Kent Circuit Court
Family Division
LC Nos.  11-052029-NA;
11-052030-NA

Before:  BORRELLO, P.J., and RONAYNE KRAUSE and RIORDAN, JJ.

PER CURIAM.

Respondent father appeals as of right the trial court's order terminating his parental rights to the minor children under MCL 712A.19b(3)(g) (failure to provide proper care and custody) and (j) (reasonable likelihood that children will be harmed if returned to the parent).[1]  For the reasons set forth below, we vacate the trial court's order and remand this case for further proceedings.

The proceedings in this case began in June 2011 when the children were removed from their mother's care.  The children were initially placed with their father, but were removed from his care in August 2011 after it was discovered that the children were living in deplorable conditions and that they had head lice.  At the time the children were removed from the father's care, he was living with his sister and lacked suitable independent housing.  The father's primary barriers to reunification, as identified in the initial parent-agency agreement, were (1) parenting skills, (2) housing, and (3) resource availability/management.

For the first year of these proceedings, the father had minimal contact with the agency.  Moreover, for the first year and a half, he participated only in a handful of parenting time visits with the children.  During this time, the apparent goal was for the children to be reunified with their mother.  However, by the beginning of 2013, their father had reconnected with the agency and begun participating more regularly in parenting time visits.  By May 2013, the agency was allowing him to have unsupervised visits with the children out in the community.  By October 2013, he had secured independent housing, and the agency was allowing unsupervised and overnight visits in his home.  Initially, the agency noted no "glaring" concerns with the father's

---

[1] The children's mother voluntarily relinquished her parental rights to the children at issue.

parenting skills. However, around October 2013, the agency began identifying several specific concerns with his parenting skills, including his failure to provide adequate nutrition for the children, failure to properly supervise the children, failure to properly administer medications to the children, and his propensity for allowing relatives in the home during visits, which interfered with the children's one-on-one time with him. At the January 15, 2014 permanency planning hearing, the caseworker opined that the overnight visits with the father were not going well. Thereafter, a supplemental petition was filed and termination proceedings began on April 24, 2014. The caseworker testified and opined that he had failed to rectify the lingering concerns with his parenting skills. The trial court subsequently terminated his parental rights.

On appeal, the father argues that the agency failed to make reasonable efforts to reunify him with his children. "When a child is removed from a parent's custody, the agency charged with the care of the child is [usually] required to report to the trial court the efforts made to rectify the conditions that led to the removal of the child." *In re Plump*, 294 Mich App 270, 272; 817 NW2d 119 (2011). "The adequacy of the petitioner's efforts to provide services may bear on whether there is sufficient evidence to terminate a parent's rights." *In re Rood*, 483 Mich 73, 89; 763 NW2d 587 (2009). "[A trial] court is not required to terminate parental rights if the State has not provided to the family of the child . . . such services as the State deems necessary for the safe return of the child to the child's home." *Id.* at 104.

As noted, the proceedings in this case began in June 2011 and lasted approximately three years. However, the only professional services offered to the father during that time frame were at the very outset of the case. By January 2012, he had completed those services. Undoubtedly, there was a lengthy period between September 2011 and June 2012 in which he had limited contact with the agency and participated in minimal parenting time visits, which hindered the agency's ability to assess his progress and identify his ongoing needs. During this time frame, the father was, for the most part, impossible to assist. He refused visits to his home, stating that he only wished to be contacted by mail. When he was asked what he had learned during his parenting courses, he curtly responded "nothing I didn't already know."

However, by the beginning of 2013, the father had reconnected with the agency and begun participating more regularly in parenting time visits. Thereafter, over the next year, the agency facilitated regular parenting time visits, including unsupervised and overnight visits. It was during this time frame that the agency identified the above concerns with his parenting skills. Despite these concerns, however, the agency did not refer him to any additional professional services. For example, the agency did not refer the father to additional parenting classes or a nutrition class. Moreover, the agency did not provide him with a parenting aide. Instead, the agency and foster parents merely gave him "recommendations" for improving his parenting skills following parenting time visits. At the termination hearing, the caseworker acknowledged that the deficiencies in his parenting skills were "fairly basic." Yet, while she personally believed that the "recommendations" she and the foster parents gave him were sufficient, she acknowledged that additional services—such as additional parenting classes or a nutrition class—could have been helpful. Likewise, the children's therapist opined that the father would have benefitted from additional education to teach him how to address the children's specific sensitivities, such as their trust and anxiety issues. However, the record reveals that no such services were offered.

The agency's failure to make reasonable efforts in this case is particularly egregious in light of the minimal evidence presented in support of termination. "In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). We review for clear error a trial court's determination that a statutory ground has been proven by clear and convincing evidence. *Id*.; MCR 3.977(K). A finding is clearly erroneous if, although there is evidence to support it, we are left with a definite and firm conviction that a mistake has been made. *In re HRC*, 286 Mich App 444, 459; 781 NW2d 105 (2009).

As noted above, the caseworker agreed that the father had no "glaring" deficits in his parenting skills, and in fact acknowledged that he was able to meet the children's basic needs for food and shelter. There was no evidence that the father failed to provide the children with adequate nutrition or consistently failed to supervise the children. There was minimal evidence concerning father's failure to properly administer medications. And, there was no evidence that relatives in the home were inappropriate or in any way interfered with his ability to parent the children. In other words, while he may have been a less-than-ideal parent, the totality of the evidence suggested that he possessed at least minimally sufficient parenting skills and that he was willing and able to provide for the children. The father's deficiencies were "fairly basic," and should have been more adequately addressed by the agency.

In addition, the minor children expressed an interest in living with their father. While there was testimony relative to some anxiety issues expressed by the children, nothing in the record indicates that the children feared their father or that he put them in any type or form of psychological injury. In light of these conclusions, we hold that the trial court clearly erred in finding that a statutory ground for termination was proved by clear and convincing evidence. In particular, the trial court clearly erred in concluding, pursuant to MCL 712A.19b(3)(g), that the father had failed to provide proper care or custody and that he would be unable to do so within a reasonable time. Likewise, the trial court clearly erred in determining, pursuant to MCL 712A.19b(3)(j), that the children would be harmed if returned to their father's care. There was insufficient record evidence to support such findings. Accordingly, the statutory grounds for termination were not proved by clear and convincing evidence, the trial court clearly erred in terminating the father's parental rights.

We vacate the trial court's order terminating father's parental rights and remand this case for further proceedings. By so concluding, we make clear that we do not condone the manner in which the father treated the workers assigned to his case. Nor do we assign error to those workers for the years in which the father failed to comply with the requests and dictates of those workers. We are also mindful of the exceedingly long period of time that those workers and the trial court afforded him to rectify the conditions that led to the trial court's initial adjudications in this matter. This Court makes clear that our decision to send this matter back to the trial court for further proceedings puts the burden on the father to *fully* demonstrate to the trial court that once he has received the help necessary to assist him, he can adequately and sufficiently care for his minor children. Should he fail after being afforded whatever services petitioner deems adequate to address his parental shortcomings, petitioner may once again seek to terminate his parental rights.

Reversed and remanded for further proceedings consistent with this opinion.  We do not retain jurisdiction.

/s/ Stephen L. Borrello
/s/ Amy Ronayne Krause
/s/ Michael J. Riordan