# STATE OF MICHIGAN

# COURT OF APPEALS

In re K. R. GALLITZ, Minor.

UNPUBLISHED
August 17, 2017

No. 337088
Oceana Circuit Court
Family Division
LC No. 15-010842-NA

Before: BOONSTRA, P.J., and RONAYNE KRAUSE and SWARTZLE, JJ.

PER CURIAM.

Respondent-father appeals as of right the trial court's order terminating his parental rights to the minor child under MCL 712A.19b(3)(g) and (j).[1] We affirm.

This case arises out of proceedings in which the maternal grandmother and stepgrandfather sought to terminate the parental rights of KRG's mother and respondent-father so that the grandparents could adopt the child. The grandparents were KRG's legal guardians and were also the petitioners in this matter.

Mother and respondent-father were not married but lived together in respondent-father's mother's house. Mother moved out before KRG was born because respondent-father physically abused her. Respondent-father was not at the hospital when KRG was born, and he was not listed on her birth certificate. Shortly after KRG's birth, mother had difficulty maintaining stable housing. She lived with friends and in hotels until after the termination proceedings started in this case.

Respondent-father had very little contact with KRG throughout her life. The testimony indicated that on one occasion when KRG was two months old, respondent-father was watching KRG but refused to return her to mother until mother threatened to call the police. On another occasion, when KRG was three months old, respondent-father was watching KRG but did not have clothing, diapers, or formula for her and did not have any money to buy those necessities. Petitioners gave respondent-father $50 to buy necessities for KRG.

---

[1] The trial court also terminated mother's parental rights. Mother, however, is not a party to this appeal.

-1-

In April 2012, when KRG was not yet one year old, petitioners got a phone call from mother's then-boyfriend (not respondent-father) that petitioners needed to pick up KRG because mother had been arrested. Mother was only incarcerated for less than 24 hours, but she left KRG in petitioners' care after her release. Soon after, respondent-father went to petitioners' house to visit KRG, but petitioners denied him visitation because they knew that mother did not want respondent-father around KRG. Petitioners told respondent-father to contact mother about visiting KRG. Shortly after this incident, respondent-father moved to Las Vegas, Nevada, to work. He remained there for approximately three years, during which he did not have any contact with KRG, did not send her any money, and did not otherwise provide her with any care or support.

In August 2012, petitioners sought guardianship of KRG because they were caring for her without any authority to act on her behalf, mother's involvement was minimal, and they wanted to include KRG on their health insurance. The guardianship was granted. Respondent-father moved back to Michigan in 2014.

In January 2015, petitioners filed a petition to terminate mother's parental rights. After respondent-father was located, he voluntarily signed an acknowledgment of paternity making him KRG's legal father and a respondent to the petition. The trial court assumed jurisdiction of KRG, finding that respondent-father, when he was able to do so, failed or neglected to provide proper or necessary support or other care for KRG's health or morals. The trial court also found that respondent-father abandoned KRG and that there was a guardianship in place, but respondent-father failed to provide support or to visit, contact, or communicate regularly with KRG for two years.

Respondent-father testified that he believed he could adequately care for KRG because he had a stable residence and finances. Respondent-father's mother, however, testified that respondent-father lived with her, that respondent-father was unemployed, and that she supported respondent-father and his other minor child.

Dr. Joseph Auffrey testified that he attempted to do a court-ordered psychological evaluation on respondent-father. According to Dr. Auffrey, however, respondent-father was only marginally cooperative. Dr. Auffrey testified that respondent-father functioned at an adolescent level and that respondent-father seemed unwilling to take any personal responsibility for anything that happened with KRG up to that point. Dr. Auffrey stated that respondent-father showed "very little concern about the possible impact of transitioning into fatherhood with [KRG]." He also noted that "there was every indication that [respondent-father] hardly knew [KRG], and he didn't know much about her in terms of what her needs might be."

Dr. Auffrey opined that respondent-father would require extensive services to be able to care for KRG, including coparent counseling with petitioners, short-term mental health therapy to address his anger issues and negative attitude, and a long-term service plan to care for KRG. According to Dr. Auffrey, it would be difficult for respondent-father to become an adequate father. Dr. Auffrey also opined that respondent-father posed a risk of harm to KRG if she was placed with him because there was not an established bond between KRG and respondent-father. Dr. Auffrey's overall impression of respondent-father was that respondent-father felt that he had the right to have his child without regard to any deficiencies he might have.

Mother testified that she did not feel that respondent-father's home would be a safe environment for KRG. Mother believed that it was not in KRG's best interests for respondent-father to have rights to her because respondent-father had abandoned her and only wanted to visit KRG because respondent-father knew that mother did not want him to visit KRG.

The trial court found by clear and convincing evidence that statutory grounds for termination under MCL 712A.19b(3)(g) and (j) had been established. The trial court's determination rested, in part, upon its finding that respondent-father was physically abusive toward mother and, on one occasion, refused, without any legal authority, to return KRG to mother. The trial court noted that respondent-father had "no bond with [KRG] whatsoever" and only attempted to visit her out of spite for mother. The trial court stated that respondent-father did not have a job or independent, appropriate housing for KRG and found that respondent-father was noncooperative with Dr. Auffrey's evaluation, which it credited as evidence that respondent-father's perspective of his intellectual and parenting abilities was skewed. The trial court stated that respondent-father took no personal responsibility for KRG's care or custody and demonstrated a complete lack of understanding for the need to transition into a relationship with the child with whom he had no bond or relationship.

The trial court also determined by a preponderance of the evidence that termination of respondent-father's parental rights was in KRG's best interests because respondent-father had no contact with KRG for almost five years, there was no bond between the two, and respondent-father did not have a job or stable home. The trial court opined that respondent-father viewed KRG as more of a possession than a responsibility and put his own wants "far above" KRG's needs. The trial court stated that respondent-father was in need of parenting services and mental health services, but he did not demonstrate any interest in addressing those issues.

On appeal, respondent-father first argues that the trial court clearly erred in assuming jurisdiction over KRG. We disagree. Respondent-father failed to raise the issue of jurisdiction in his statement of questions presented on appeal. Therefore, the issue was not properly presented for appellate review, and we decline to address it. *People v Anderson*, 284 Mich App 11, 16; 772 NW2d 792 (2009). Similarly, while respondent-father did indicate in his statement of questions presented that he was challenging the trial court's best-interests determination, he failed to address the merits of that determination or otherwise develop the argument in any detail in his brief. Accordingly, respondent-father has abandoned this issue as well. *People v Coy*, 258 Mich App 1, 19-20; 669 NW2d 831 (2003).

Respondent-father next argues that the trial court clearly erred in finding that one or more of the statutory grounds to terminate his parental rights were established. We again disagree.

In order to terminate parental rights, the trial court must find that at least one of the statutory grounds for termination has been proven by clear and convincing evidence. MCL 712A.19b(3); *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). We review the trial court's determination for clear error. *Id*. A finding is clearly erroneous when, giving deference to the trial court's special opportunity to judge witness credibility, we are left with a definite and firm conviction that a mistake has been made. *In re HRC*, 286 Mich App 444, 459; 781 NW2d 105 (2009).

The trial court first terminated respondent-father's parental rights to KRG under MCL 712A.19b(3)(g), which provides that the trial court may terminate a parent's parental rights if it finds by clear and convincing evidence that the "parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age."

In this case, shortly following KRG's birth, respondent-father moved to Las Vegas, Nevada. For approximately the first four years of KRG's life, respondent-father did not provide any financial support or otherwise contribute to her care, aside from a one-time child support payment of a couple hundred dollars. There was testimony that respondent-father was with KRG on a couple of occasions; however, respondent-father did not provide proper care or custody for her during those times. On one such occasion, respondent-father had to borrow money from petitioners because he could not purchase necessities for KRG; on another occasion, respondent failed to return KRG to mother at the conclusion of the visit. Dr. Auffrey opined that respondent-father seemed unwilling to take any personal responsibility for anything that happened with KRG up to that point. Dr. Auffrey noted that respondent-father hardly knew KRG and opined that it would be difficult for respondent-father to become an adequate father to KRG. Respondent-father's mother also testified that respondent-father was unemployed and that she supported respondent-father and his other minor child.

We hold that the trial court did not clearly err in determining that clear and convincing evidence established that respondent-father failed to provide proper care and custody for KRG and that respondent-father would be unable to do so within a reasonable time considering the child's age. MCL 712A.19b(3)(g).

The trial court next terminated respondent-father's parental rights under MCL 712A.19b(3)(j), which provides that the trial court may terminate a parent's parental rights upon finding by clear and convincing evidence that there "is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent." Our case law makes clear that "harm" includes emotional as well as physical harm. *In re Hudson*, 294 Mich App 261, 268; 817 NW2d 115 (2011).

Respondent-father argues that because he never physically harmed either of his children, and because he had such little contact with KRG that he could not have harmed her, there was no evidence presented that there was a reasonable likelihood that KRG would be harmed if returned to respondent-father. The argument is without merit.

First, there was evidence presented that respondent-father could not provide the necessities that KRG required. Since before his move to Nevada, respondent-father has been unable and unwilling to provide KRG with basic necessities. This lack of support and care can certainly result in physical and emotional harm. Additionally, Dr. Auffrey's testimony clearly established that respondent-father posed a risk to KRG's mental and physical health if she were placed with him. Moreover, there is evidence that respondent-father was physically abusive towards mother and mother testified that she feared for KRG'S safety when she was with respondent-father.

-4-

Based upon this evidence, we conclude that the trial court did not clearly err in determining that there was a reasonable likelihood that KRG would be harmed if placed in respondent's care. MCL 712A.19b(3)(j). Thus, the trial court did not clearly err in terminating respondent-father's parental rights under MCL 712A.19b(3)(g) or (j).

Affirmed.

/s/ Mark T. Boonstra
/s/ Amy Ronayne Krause
/s/ Brock A. Swartzle