*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* PEYERK, Minors.

UNPUBLISHED
July 11, 2025
1:43 PM

No. 371735
Huron Circuit Court
Family Division
LC No. 19-004763-NA

Before: MALDONADO, P.J., and BOONSTRA and WALLACE, JJ.

PER CURIAM.

Respondent appeals by right the trial court's order terminating respondent's parental rights to his two minor children, RP and EP (collectively, "the children"), under MCL 712A.19b(3)(b)(*iii*), (3)(h), (3)(k)(*ii*), and (3)(m)(*i*). We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Respondent is the biological and legal father of RP and EP. RP and EP have a half-sibling, JH, sharing the same mother,[1] but having a different father. Prior to the children's removal, they lived with respondent, JH, and the children's mother. In 2023, the Department of Health and Human Services (DHHS or petitioner) filed a petition to terminate respondent's parental rights to RP and EP, based on respondent's sexual abuse of JH. The petition alleged that JH had disclosed that respondent had sexually abused her several times over a period of approximately a year, that this abuse occurred in the home where RP and EP lived, and that respondent had been criminally charged for this conduct. The children were removed and placed with their mother. The termination proceedings were adjourned to await the outcome of respondent's criminal charges. Ultimately, a jury found respondent guilty of one count of third-degree criminal sexual conduct (CSC-III), MCL 750.520d(1)(b), and 10 counts of fourth-degree criminal sexual conduct (CSC-

---

[1] The children's mother was not a respondent in the proceedings below.

IV), MCL 750.520e(1)(b) against JH. Respondent was sentenced to serve a prison term of 8 to 15 years for the CSC-III conviction, as well as 339 days for the CSC-IV convictions.

After respondent's sentencing, his termination proceedings continued. Respondent waived the probable cause determination for the petition, and petitioner moved for termination at the initial adjudication. Respondent opted for a jury trial adjudication. At trial, JH testified about the sexual abuse respondent had perpetrated against her. JH described how the abuse began approximately two years prior when she was between 15 and 16 years of age. JH stated that respondent had habitually slapped, grabbed, and groped her buttocks. JH also testified to an incident in 2023 when respondent fondled her breasts, and another when respondent came into JH's room while she was asleep and penetrated her vagina with his fingers.

After JH disclosed the abuse to her basketball coach, she was taken to the hospital and underwent an examination during which she disclosed the abuse to medical personnel. The medical records and disclosures were admitted into evidence.

The children's mother also testified that respondent had often physically abused her in front of RP and EP. This included an incident in which respondent hit her, choked her, and acted as if he was going to use a firearm against her. The children's mother also testified that respondent had directly physically abused RP and EP, such as by kicking them with his shoes on.

At the close of petitioner's proofs, respondent moved for a directed verdict, which the trial court denied. The jury found that statutory grounds supported the trial court's exercise of jurisdiction over the children.

At the termination hearing in May 2024, petitioner presented evidence regarding the children's best interests and chose to rely on the adjudication trial's evidence for the statutory grounds. Caitlin Stone-Webber, a Director with the Child Advocacy Center, testified that RP and EP had both repeatedly expressed feeling unsafe around respondent. She further testified that both children were doing very well with mother and were happy there.

Monica Siegfried, the Children's Protective Services (CPS) case worker who had worked with RP and EP until her retirement, testified that she had no concerns with the children's home environment with their mother, and that the children were handling respondent's absence well. In fact, RP and EP had stated that "things were better" with respondent gone and that they felt safe. Andrea Watson, RP and EP's current CPS worker, testified that RP and EP had never mentioned respondent since she began working with them, which she believed showed that they lacked a strong bond with him. She expressed concern with the children having any contact with respondent due to his sexual abuse of JH. She expressed particular concern that EP would be close to the age that JH was at the time the abuse started when respondent was released from incarceration.

Respondent denied the abuse and denied being controlling or manipulative. He testified that he believed JH had falsely accused him because he had disciplined her in a way she did not like and because she resented him for "destroying" her mother's marriage to another individual. Additionally, respondent testified that he had taken care of RP and EP while their mother worked, that he had often played with them, and that his relationship with both children was "very good." He testified that he would never harm RP or EP.

The trial court found JH's testimony credible and reliable, and found that there was clear and convincing evidence of statutory grounds to terminate respondent's parental rights to RP and EP as described. Furthermore, the trial court found that termination was in RP and EP's best interests. This appeal followed.

## II. JURISDICTION

Respondent argues that there was insufficient evidence at the adjudication trial to sustain the jury verdict. We disagree. This Court recently discussed the standard of review applicable to a challenge to the sufficiency of the evidence at an adjudication trial:

> In determining whether sufficient evidence exists to sustain a jury's verdict finding jurisdiction in a child-neglect proceeding, this Court reviews the evidence in the light most favorable to the petitioner, and considers whether there was sufficient evidence to justify a rational trier of fact in finding jurisdiction by a preponderance of the evidence. Because this review is deferential, a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict. And it "is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." [*In re Sluiter*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 368266); slip op at 12 (quotation marks and citation omitted).]

The trial court acquires jurisdiction over a minor child when it finds "by a preponderance of the evidence that the child comes within the statutory requirements of MCL 712A.2." *In re Miller*, 347 Mich App 420, 424-425; 15 NW3d 287 (2023) (quotation marks and citation omitted). The statute addresses "the child's situation at the time the petition was filed." *Miller*, 347 Mich App at 430 (quotation marks and citation omitted). The anticipatory neglect doctrine allows a court to take jurisdiction over a child based on a parent's treatment of a sibling or siblings; the doctrine "recognizes that [h]ow a parent treats one child is certainly probative of how that parent may treat other children." *Sluiter*, ___ Mich App at ___; slip op at 15 (quotation marks and citation omitted; alteration in original). Accordingly, when abuse occurs against one of the children within a family, this doctrine permits the trial court to assume jurisdiction over another child despite no abuse having occurred against that child. See *id.*

Respondent argues that JH's testimony concerning the sexual abuse was implausible and inconsistent and therefore should not have been found credible. However, it is for the trier of fact, and not for this Court, to make credibility determinations and weigh evidence. *Sluiter*, ___ Mich App at ___; slip op at 12. JH's testimony was clear and detailed, and described respondent's sexual abuse. Her testimony was consistent with her statements made to medical examiners immediately following the incident in which respondent digitally penetrated her. This pattern of sexual abuse within the home environment was ample evidence for a jury to find that RP and EP were at a substantial risk of harm to their mental wellbeing, see MCL 712A.2(b)(1), and that their home environment by reason of cruelty, criminality, and depravity was unfit for them to live, see MCL 712A.2(b)(2). *Sluiter*, ___ Mich App at ___; slip op at 15.

Respondent argues that in order for the anticipatory neglect doctrine to apply, there must still be *some* indication that RP and EP would be at risk of being abused if returned to his care, and no evidence was presented that would allow the jury to make that conclusion. We disagree. There was evidence of domestic violence perpetrated by respondent against RP and EP's mother while they were present, as well as evidence of direct physical abuse. Considering that evidence, as well as the sexual abuse of JH while RP and EP were in the home, a reasonable jury could conclude that respondent posed a danger to the minor children. See *In re Mota*, 334 Mich App 300, 323; 964 NW2d 881 (2020). Accordingly, the evidence offered at trial was sufficient to support the jury verdict.

## III. STATUTORY GROUNDS FOR TERMINATION

Respondent also argues that the trial court erred by holding that statutory grounds for the termination of his parental rights had been proven. We disagree. We review for clear error a trial court's determination that statutory grounds to terminate a respondent's parental rights exist. *In re Williams*, 286 Mich App 253, 271; 779 NW2d 286 (2009); MCR 3.977(K).

To terminate parental rights, a trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination found in MCL 712A.19b(3) has been met. *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012). "Only one statutory ground for termination need be established." *Id*. at 41. The reviewing court must not "substitut[e] its judgment for that of the trial court," see *In re Hall*, 483 Mich 1031, 1031; 765 NW2d 613 (2009), and should consider the trial court's special opportunity to evaluate the credibility of witnesses, MCR 2.613(C).

MCL 712A.19b(3)(k)(*ii*) provides that a trial court "may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence," that

> (k) The parent abused the child or a sibling of the child, the abuse included 1 or more of the following, and there is a reasonable likelihood that the child will be harmed if returned to the care of the parent:
>
> \* \* \*
>
> (*ii*) Criminal sexual conduct involving penetration, attempted penetration, or assault with intent to penetrate.

In this case, the trial court found credible and reliable JH's testimony regarding respondent's sexual abuse, including digital penetration. It further found that the abuse began as JH was developing into a young woman and that EP would be at a similar age at the time of respondent's earliest possible release, which put her at a heightened risk of harm. The evidence, including respondent's criminal convictions and sentences, amply supported those findings. Therefore, the trial court did not clearly err by finding that there was a reasonable likelihood that the minor children would be harmed if returned to respondent's care. *Williams*, 286 Mich App at 271. "Having concluded that at least one ground for termination existed, we need not consider the additional grounds upon which the trial court based its decision." *In re HRC*, 286 Mich App 444, 461; 781 NW2d 105 (2009).

## IV.  BEST-INTEREST DETERMINATION

Respondent also argues that the trial court clearly erred by determining that termination was in the minor children's best interests.  We disagree.  This Court reviews for clear error the trial court's decision on whether termination is in the children's best interests.  *Olive/Metts*, 297 Mich App at 41-42.  Clear error occurs when, although there is evidence supporting the trial court's decision, "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made."  *Id*. at 41 (quotation marks and citation omitted).

Once the trial court determines that at least one of the statutory grounds have been proven by clear and convincing evidence, the trial court must also determine whether petitioner has shown by a preponderance of the evidence that termination is in the children's best interests.  *In re Moss*, 301 Mich App 76, 83-84; 836 NW2d 182 (2013).  When deciding whether termination is in the children's best interests, the trial court may consider "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home."  *Olive/Metts*, 297 Mich App at 41-42 (citations omitted).  The trial court may also consider evidence that the children are not safe with the parent, that they are thriving in foster care, and that the foster care home can provide stability and permanency.  *In re VanDalen*, 293 Mich App 120, 141; 809 NW2d 412 (2011).  The anticipatory neglect doctrine is applicable to the best-interests determination.  See *Mota*, 334 Mich App at 323-324.

In this case, the trial court's decision was premised on a lack of a bond between respondent and the children; how well the children were doing in mother's care; the children's expressions of feeling unsafe around respondent; the need for permanency, stability, and finality; respondent's sexual abuse of JH and resulting criminal convictions; and respondent's controlling nature.  The evidence amply supported the trial court's decision.  JH provided extensive testimony regarding respondent's abuse, and the children's mother testified at both the adjudication trial and termination hearing about respondent's controlling and manipulative nature.  The children's mother also testified that RP and EP had witnessed respondent's domestic violence against her.  Stone-Webber testified that the children had stated that they did not feel safe around respondent and that, based on her behavior, EP may have witnessed respondent physically assault her mother.  Siegfried and Watson both testified to the lack of a bond between the children and respondent.

Siegfried and Watson also expressed serious concerns about the children being returned to respondent's care, or even for respondent being allowed to have contact with the children.  The children's mother likewise expressed concern that if the children were allowed contact with respondent, respondent might sexually abuse EP or physically abuse the children.  In contrast, all witnesses testified that the children were thriving in their mother's care and that there were no concerns for their wellbeing, safety, or needs.  Respondent argues that the trial court should have given more weight to his testimony at the termination hearing that he had a close relationship with the children and would never harm them, but it was for the trial court to credit and weigh all

evidence before it.  See *Hall*, 483 Mich 1031; MCR 2.613(C).  Respondent has not shown that the trial court clearly erred by holding that termination of his parental rights was in RP and EP's best interests.  *Olive/Metts*, 297 Mich App at 41-42.

Affirmed.

/s/ Allie Greenleaf Maldonado
/s/ Mark T. Boonstra
/s/ Randy J. Wallace