# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* L. D. WELCOME-NEWTON, Minor.

UNPUBLISHED
June 23, 2015

No. 324800
Oakland Circuit Court
Family Division
LC No. 13-814601-NA

Before: MARKEY, P.J., and OWENS and GLEICHER, JJ.

PER CURIAM.

Respondent appeals by right the order terminating her parental rights to the minor child under MCL 712A.19b3(g), (i), (j), and (l). We affirm.

Respondent's parental rights were terminated to five older children in October 2008 after she failed to comply with a treatment plan designed to address environment neglect and mental health issues. Respondent gave birth to the child at issue in October 2013. Petitioner filed an original petition for permanent custody one month later after an investigation revealed that respondent was unable to provide a fit and stable home environment for her newborn child.

On appeal respondent first argues that the trial court erred when it found probable cause to authorize the petition at the preliminary hearing. "A preliminary hearing is the formal review of the petition when the judge or referee considers authorizing the petition and placing the case on the formal calendar." *In re Hatcher*, 443 Mich 426, 434; 505 NW2d 834 (1993). The trial court may authorize the filing of the petition if there is probable cause to believe that one or more of the allegations in the petition are true and fall within MCL 712A.2(b). MCR 3.962(B)(3); MCR 3.965(B)(11).

In this case, the trial court's finding of probable cause was supported by the testimony of Children's Protective Services (CPS) worker Madelyn Gareau. At the probable cause hearing Gareau stated that respondent's parental rights were terminated in 2008 due to emotional and physical neglect. Respondent's past issues of homelessness and mental health concerns that led to termination of parental rights in the previous case were still a threat to this child. Gareau had not been able to establish that respondent had an adequate permanent home or sufficient financial support to provide care for the child.

There was also no evidence that respondent's mental health issues had been resolved as she demonstrated behavior consistent with paranoid schizophrenia or clinical paranoia. In every conversation or contact with the agency respondent's behavior was erratic, impulsive, and

-1-

threatening. Respondent was referred for a psychological evaluation at Common Ground, but she would not participate or answer any questions during the telephone evaluation. Patently, the child's welfare was not a priority to respondent as she failed to cooperate with anyone working on the case to ensure the child's safety. Given this testimony and respondent's prior CPS history, the trial court did not clearly err in finding probable cause to authorize the petition.

Respondent next argues that the trial court erred in its best-interest determination. Once a statutory basis for termination has been shown by clear and convincing evidence, the court must determine whether termination is in the child's best interests. MCL 712A.19b(5). Best interests are determined on the basis of the preponderance of the evidence. *In re Moss*, 301 Mich App 76, 83; 836 NW2d 182 (2013).

The trial court did not err in finding that termination of respondent's parental rights was in the best interests of the child. Respondent had untreated mental health issues and was unable to provide a stable home environment or meet the child's material needs. Respondent argues that petitioner never offered her services and that she should have been given an opportunity to parent. This argument is unpersuasive. "Pursuant to MCL 712A.19a(2)(c), the prior involuntary termination of parental rights to a child's sibling is a circumstance under which reasonable efforts to reunite the child and family need not be made." *In re Smith*, 291 Mich App 621, 623; 805 NW2d 234 (2011). In this case petitioner requested termination of respondent's parental rights in the initial petition. Petitioner "is not required to provide reunification services when termination of parental rights is the agency's goal." *In re HRC*, 286 Mich App 444, 463; 781 NW2d 105 (2009). Therefore, DHS was not required to provide respondent with services to assist with her reunification.

Nevertheless, the petitioner did attempt to provide respondent with services. CPS interviewed the hospital staff, attempted to interview respondent and the child's father, spoke to relatives, referred respondent for a psychological evaluation, conducted a family team meeting, and conducted supervised visitations. After the petition was filed, DHS referred respondent to Common Ground for a psychological evaluation, housing, and parenting classes. Although petitioner gave respondent bus passes, respondent still missed visits with the child and court hearings. Even if more services had been provided, we conclude it is unlikely respondent would have participated in them.

Respondent's claim that this case was based only on her prior termination is without merit. Respondent's parental rights were terminated in 2008 because of her untreated mental health issues and environmental neglect, including her lack of housing and income. These same problems continued at the time of the child's removal in this case. Respondent had not sought treatment for her mental health issues, and she had no housing or employment. Respondent also lacked self-awareness or insight into her problems. Respondent and the child's father told foster care worker Young they only needed housing and did not want any help with parenting skills or psychological issues. Given respondent's unwillingness to cooperate with services throughout the case, we find there is no reason to believe she will address her mental health issues, homelessness, and lack of employment within a reasonable time. Thus, contrary to respondent's claim, her CPS history was not the only factor the trial court relied on in making its best-interest determination.

Respondent also argues that the testimony showed that she and her child were bonded. The testimony actually revealed that respondent had compromised the parent-child bond by missing so many visits. Furthermore, even if there had been a strong bond, it would not be more important than the child's welfare, and respondent was unable to provide a safe, stable home environment.

Finally, respondent argues that there was no evidence the trial court considered the child's relative placement when making its best-interest determination. "A trial court's failure to explicitly address whether termination is appropriate in light of the children's placement with relatives renders the factual record inadequate to make a best-interest determination and requires reversal." *In re Olive/Metts*, 297 Mich App 35, 43; 823 NW2d 144 (2012). However, in this case, the trial court made an explicit finding on the record that termination of parental rights was in the child's best interests despite her placement with relatives. The trial court found that the child had lived with respondent's niece her entire life and was thriving in that placement. The child has a strong need for stability and safety to facilitate her growth and development that respondent cannot provide. Accordingly, the trial court did not clearly err by finding that termination was in the best interests of the child even though the child was placed with relatives.

We affirm.

/s/ Jane E. Markey
/s/ Donald S. Owens
/s/ Elizabeth L. Gleicher