# STATE OF MICHIGAN

# COURT OF APPEALS

In re REMSING, Minors.

UNPUBLISHED
May 19, 2016

No. 329945
Branch Circuit Court
Family Division
LC No. 13-004946-NA

Before: MURPHY, P.J., and CAVANAGH and RONAYNE KRAUSE, JJ.

PER CURIAM.

Respondent-mother appeals as of right the order terminating her parental rights to the minor children WR and CR under MCL 712A.19b(3)(c)(i) (conditions of adjudication continue to exist) and (g) (failure to provide proper care or custody). We affirm.

Respondent's parental rights to three other minor children were terminated on November 21, 2011. WR was born thereafter on May 1, 2013. The trial court removed WR on January 22, 2014, because of respondent's failure to adequately treat her mental health problems, domestic violence between her and the children's father, and respondent's failure to provide suitable housing. Respondent showed progress and the situation substantially improved by late 2014. CR was born on September 9, 2014, and petitioner did not petition for his removal because there was no concern that CR was placed at risk of harm in respondent's custody. WR was returned to respondent on December 4, 2014. However, WR and CR were both removed from respondent's custody on January 27, 2015, because of her mental health issues and her inability to maintain housing. Respondent's compliance with services and her interaction with the minor children regressed through 2015, resulting in termination of her parental rights. The father voluntarily relinquished his rights to WR and CR on August 31, 2015, and he is not a party to this appeal.

On appeal, respondent challenges the trial court's findings with respect to the statutory grounds for termination and the children's best interests. If a trial court finds that a single statutory ground for termination has been established by clear and convincing evidence and that it has been proved by a preponderance of the evidence that termination of parental rights is in the best interests of a child, the court is mandated to terminate a respondent's parental rights to that child. MCL 712A.19b(3) and (5); *In re Moss,* 301 Mich App 76, 90; 836 NW2d 182 (2013); *In re Ellis,* 294 Mich App 30, 32; 817 NW2d 111 (2011). "This Court reviews for clear error the trial court's ruling that a statutory ground for termination has been established and its ruling that termination is in the children's best interests." *In re Hudson,* 294 Mich App 261, 264; 817 NW2d 115 (2011); see also MCR 3.977(K). "A finding is clearly erroneous if, although there is

-1-

evidence to support it, we are left with a definite and firm conviction that a mistake has been made." *In re HRC*, 286 Mich App 444, 459; 781 NW2d 105 (2009). In applying the clear error standard in parental termination cases, "regard is to be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989).

Termination of parental rights is proper under MCL 712A.19b(3)(g) where "[t]he parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age." With regard to MCL 712A.19b(3)(g), the trial court found that respondent had failed to provide the minor children with a suitable home environment and that she engaged in relationships involving domestic violence. These findings were not clearly erroneous.

Before respondent's relationship with the father, she and a boyfriend had a violent relationship. And, respondent's relationship with the father was tumultuous. Their marriage counselor described it as "toxic." In May 2012, the father threw a bag at respondent in the street, causing her to fall. Respondent bit the father in July 2013. On January 7, 2014, after a domestic dispute, the father asked the police to take respondent to a psychiatric hospital. Respondent and the father screamed at each other in WR's presence. Although their relationship improved in late 2014, it worsened some months later. There was evidence that the father threw CR into respondent. On April 1, 2015, respondent told the DHHS that she had been involved in a physical altercation with the father, resulting in him having scratches all over his body. After an argument with respondent on July 4, 2015, the father threw her belongings outside. We find that this domestic violence prevented respondent from providing the minor children with proper care and custody. Further, although respondent ended her relationship with the father before her rights to WR and CR were terminated, she immediately began a relationship with a man who, according to the DHHS, had an extensive and violent criminal history. Respondent testified at the termination hearing that she could not control whether she entered into a relationship with someone. Moreover, respondent herself was charged with assault for threatening a DHHS worker after the termination petition was filed. Therefore, there was no reasonable likelihood that respondent would rectify domestic violence issues within a reasonable time.

Additionally, respondent exhibited an inability to maintain suitable housing. Although she frequently lived with the father, she often lived with family, friends, or in a shelter. The DHHS was not always made aware of where respondent was living. Respondent was also unable to maintain stable employment that would allow her to maintain housing. She did not bring necessities for the minor children during visits, indicating that she was incapable of providing for their needs. And, there was no reasonable likelihood that respondent would be able to provide the minor children a suitable home within a reasonable time. Her employment at a fast-food restaurant was terminated after she made threats, while at work, to tear the face off of a certain DHHS worker. Although there was evidence that respondent obtained an apartment as of October 1, 2015, she admitted that she did not pay rent. Rather, her boyfriend, whom she had known for approximately one month, paid the rent. And the minor children's names were not on the lease. Except for brief progress for a few months in late 2014, respondent exhibited a chronic failure to participate and benefit from services. Given the duration of the case, the extent of the services offered, and respondent's steadfast refusal to acknowledge personal responsibility

for the barriers to reunification, we conclude that there was no reasonable likelihood that she would participate or benefit from services within a reasonable time, further supporting termination. See *In re LaFrance Minors*, 306 Mich App 713, 729; 858 NW2d 143 (2014). For the above reasons, the trial court did not clearly err in terminating respondent's parental rights under MCL 712A.19b(3)(g). Because only a single statutory ground need be established to support termination, we decline to address respondent's arguments in connection with MCL 712A.19b(3)(c)(*i*).

With respect to the trial court's best-interests determination, we place our focus on the child rather than the parent. *In re Moss*, 301 Mich App at 87. The trial court may consider such factors as "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (citations omitted).

The trial court found that termination was in the minor children's best interests because respondent did not interact with them during visits, they had been in foster care for most of their lives, they flourished in foster care, and they needed permanency and stability. The trial court did not clearly err in so finding. For most of the case, respondent was more concerned about her relationship with the father than she was in caring for the minor children. As of May 30, 2014, she only attended approximately one-third of her scheduled visits. Respondent often arrived late and left early. She frequently needed prompting to complete parenting tasks. Although respondent's interactions with the minor children improved in late 2014, they worsened in January 2015 and remained inadequate. She refused to provide them with their needs. Rather than interact with WR and CR, respondent sat on the couch or smoked cigarettes and watched other people interact with them. Respondent did not take full advantage of opportunities to visit the minor children. As of July 31, 2015, she missed 19 of 66 scheduled visits. After August 31, 2015, respondent did not visit the children at all. Respondent testified that she thought that after August 31, 2015, she was not permitted to visit the children. But, a DHHS employee testified that respondent was explicitly told on August 31, 2015, to contact the DHHS to arrange visits. Respondent never did so and admitted that she never tried. Thus, it is apparent that she had no bond with the minor children. In contrast, the minor children were well-bonded to their foster parents. The foster parents provided for the children's needs and were willing to adopt them. The DHHS reported on June 4, 2015, that it was "amazing to see the difference in [the children's] behaviors and demeanor with the foster family compared to their biological parents." See *In re Olive/Metts*, 297 Mich App at 41-42; *In re White*, 303 Mich App 701, 714; 846 NW2d 61 (2014). In addition, respondent's failure to comply with the case service plan, her inability to maintain suitable housing, and her constant involvement in domestic violence supported the trial court's ruling that termination was in the minor children's best interests. We find no clear error.

Affirmed.

/s/ William B. Murphy
/s/ Mark J. Cavanagh
/s/ Amy Ronayne Krause

-3-