# STATE OF MICHIGAN

# COURT OF APPEALS

In re PIRIE, Minors.

UNPUBLISHED
March 8, 2018

Nos. 339190; 339205
St. Clair Circuit Court
Family Division
LC No. 15-000387-NA

Before: TALBOT, C.J., and BECKERING and CAMERON, JJ.

PER CURIAM.

In Docket No. 339190, respondent-mother appeals as of right the order terminating her parental rights to her children, RRMP, RCRP, RLP, RMP, and RWP,[1] under MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist), (c)(*ii*) (existence of other conditions that cause the children to come within the trial court's jurisdiction), (g) (failure to provide proper care and custody), and (j) (reasonable likelihood that children will be harmed if returned to parent). We affirm.

In Docket No. 339205, respondent-father appeals as of right the same order terminating his parental rights to all five children under MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist), (c)(*ii*) (existence of other conditions that cause the children to come within the trial court's jurisdiction), (g) (failure to provide proper care and custody), and (j) (reasonable likelihood that children will be harmed if returned to parent). We affirm.

The trial court did not err when it terminated respondents' parental rights to the children because there was clear and convincing evidence that statutory grounds existed pursuant to MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), and (j). In addition, the trial court did not err when it determined that termination of respondents' parental rights was in the best interests of the children pursuant to MCL 712A.19b(5).

---

[1] Respondents have a sixth child, REP, who is not subject to this appeal as he reached 18 years of age prior to termination of respondents' parental rights, and therefore, was not included in the petition.

-1-

## I. STATUTORY GROUNDS

Respondents argue that the trial court erred when it found by clear and convincing evidence that there were statutory grounds to terminate their parental rights. We disagree.

The trial court must find that a statutory ground for termination is established by clear and convincing evidence in order to terminate parental rights. *In re Schadler*, 315 Mich App 406, 408; 890 NW2d 676 (2016) (citations omitted). A trial court's ruling that a statutory ground for termination was established is reviewed for clear error. *Id.* See also MCR 3.977(K). " 'A finding is clearly erroneous if, although there is evidence to support it, we are left with a definite and firm conviction that a mistake has been made.' " *In re Schadler*, 315 Mich App at 409, quoting *In re HRC*, 286 Mich App 444, 459; 781 NW2d 105 (2009).

### A. MCL 712A.19b(3)(c)(*i*)

The trial court did not err in finding that MCL 712A.19b(3)(c)(*i*) provided a statutory basis for termination of respondents' parental rights. A trial court may terminate a respondent's parental rights under MCL 712A.19b(3)(c)(*i*) if 182 days have passed since the initial disposition order, and the trial court finds by clear and convincing evidence that "[t]he conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age."

On June 8, 2017, the trial court, by way of the referee's conclusions and findings of law, found that statutory grounds existed pursuant to MCL 712A.19b(3)(c)(*i*) to terminate respondents' parental rights. As the order of disposition was entered on November 24, 2015, more than 182 had passed when the trial court entered its order of termination. The children were brought into care partly because there were allegations that RRMP was abused by the brother of respondent-father (paternal uncle), and respondents left the other children in the same home as paternal uncle due to housing issues. Although paternal uncle was convicted, and the sexual abuse was no longer taking place, the potential for the children to be victims of sexual abuse remained.

It was discovered that, in addition to all of the children having been sexually abused by their paternal uncle, they also had engaged in sexual activity with a sibling. Respondents' eldest son, REP, and RRMP reported that they had sex with each other prior to removal. It was also discovered that RLP and RCRP engaged in sexual activity while living in the foster home. It was alleged that respondent-mother knew that the boys engaged in sexual activity in the past, but did nothing to intervene. The children reported walking in on respondents having sexual intercourse while living in the home of the mother of respondent-father (paternal grandmother), in which the doors did not have door knobs or locks, and that respondents had sexual intercourse in the car while the boys were in the back seat. REP informed respondent-father of the sexual activities of RLP and RCRP in the foster home, but respondent-father did not report this to anyone until a week later. Despite respondents' parenting classes specifically related to child trauma victims, respondents continued to make inappropriate choices regarding their children. RRMP was a victim of sexual abuse by the paternal uncle, yet she asserted that respondent-father looked at pornography and masturbated in her presence while the two were living in a car. During the course of these proceedings, RRMP was aware that respondents looked for sexual

partners online, invited these individuals to their home, and that respondent-father sent a nude picture of respondent-mother, that he took without her consent, to a woman he propositioned for sex. Respondents also allowed RRMP's 18-year-old boyfriend to spend the night during an unsupervised visitation.

Thus, one of the issues that brought the children into care was the fact that RRMP was a victim of sexual abuse. Given respondents' behavior, it is clear that they did not rectify the conditions in which their children could continue to be victims of sexual abuse. Although RRMP was the victim of the paternal uncle's sexual abuse, they continued to keep RRMP apprised of their own sexual activities. As respondents continued to have issues regarding sexual boundaries throughout the course of the proceedings, there is no likelihood that respondents would rectify these conditions within a reasonable amount of time should the children be returned to their care. Therefore, the trial court did not clearly err when it terminated respondents' parental rights pursuant to MCL 712A.19b(3)(c)(*i*).

The trial court need only find clear and convincing evidence of one statutory ground in MCL 712A.19b(3) to terminate parental rights. *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). Thus, termination of respondents' parental rights was appropriate. However, the trial court properly concluded there were other statutory grounds for termination.

## B. MCL 712A.19b(3)(c)(*ii*)

The trial court did not err in finding that MCL 712A.19b(3)(c)(*ii*) provided a statutory basis for termination of respondents' parental rights. A trial court may terminate a respondent's parental rights under MCL 712A.19b(3)(c)(*ii*) if 182 days have passed since the initial disposition order, and the trial court finds by clear and convincing evidence that

> Other conditions exist that cause the child to come within the court's jurisdiction, the parent has received recommendations to rectify those conditions, the conditions have not been rectified by the parent after the parent has received notice and a hearing and has been given a reasonable opportunity to rectify the conditions, and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age. [MCL 712A.19b(3)(c)(*ii*).]

The referee did not specify in his findings of fact and conclusions of law what "other condition" existed to bring the children within the trial court's jurisdiction. The evidence demonstrates that the "other condition" is most likely the discoveries of sexual activity between the siblings during the course of these proceedings. The children were brought into care partly due to allegations of sexual abuse of RRMP by paternal uncle. Then, once the children were brought into care, it was discovered that REP and RRMP had engaged in sexual activity prior to removal, and that RLP and RCRP engaged in sexual activity prior to removal and in the foster home. RCRP reported that he had sex with every one of his siblings.

Due to the sexual abuse of RRMP, respondents attended parenting classes that specifically dealt with skills necessary to deal with children who are trauma victims. Respondent-father attended only two sessions of these classes. Despite attending these classes,

respondents still engaged in activity that was inappropriate for their children, all of whom were victims of sexual abuse. Respondent-father did not immediately report that RLP and RCRP were having oral sex in the foster home. Respondents continued to engage in inappropriate sexual relationships with other people, of which RRMP was aware. Respondents had individuals with whom they possibly engaged in sexual relationships visit or live in their home when the children would come for overnight visits. Respondent-mother spoke to RRMP about respondents' sexual relationship. Respondents received services and recommendations on how to employ proper parenting skills to children who are trauma victims, but they did not employ those skills. It is not clear that they benefitted from the class. Thus, the conditions have not been rectified, and there is not a reasonable likelihood that they will be rectified within a reasonable amount of time. MCL 712A.19b(3)(c)(*ii*). Respondents' parental rights were terminated over a year and a half after the children were adjudicated, and yet respondents did not change their behaviors.

Another condition that brought the children within the court's jurisdiction was the discovery of current sexual activity between RCRP and RLP. After this was discovered, RCRP was transferred to a residential treatment center to deal with his tendency to act out sexually. It was recommended by the social worker, Theresa McKay (McKay), that these boys should not live together, let alone stay in the same bedroom. However, respondents continued to live in their three-bedroom home, and they planned to have all of the boys sleep in the same room. Although the home that respondents lived in was initially deemed suitable for the children, it became inappropriate after the sexual relationship between RCRP and RLP was discovered. Respondents were instructed that the boys could not sleep in the same room and it would be very difficult to monitor all of the children at one time with only one parent present. However, respondents did not find a larger home or provide an alternative to their alternating work schedule, which left all of the children to the care of one respondent at a time. Thus, respondents also failed to rectify the housing issue even after it was established that RCRP and RLP could not reside in the same home or sleep in the same bedroom.

## C. MCL 712A.19b(3)(g)

The trial court did not err when it found by clear and convincing evidence that MCL 712A.19b(3)(g) applied in this case. A trial court may terminate a respondent's parental rights under MCL 712A.19b(3)(g) if the trial court finds by clear and convincing evidence that "[t]he parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age." In addition, "[a] parent's failure to participate in and benefit from a service plan is evidence that the parent will not be able to provide a child proper care and custody." *In re White*, 303 Mich App 701, 710; 846 NW2d 61 (2014).

There is ample evidence in the record that despite being provided services by petitioner to properly parent their children, respondents did not benefit from the services and did not provide proper care or custody to the children. *Id*. Despite respondents attending trauma-based parenting classes where they were taught to limit the children's exposure to the locale of the abuse, respondents intentionally drove their children past the location of the prior physical and sexual abuse. This greatly upset the children. In addition, respondents became aware that RRMP was a victim of sexual abuse by paternal uncle. RRMP was diagnosed with post-traumatic stress disorder (PTSD) as a result. Regardless, it was reported by RRMP that

respondent-father engaged in similar sexual conduct in RRMP's presence, including looking at pornography and masturbating while RRMP and respondent-father lived in a car. Respondent-mother had inappropriate conversations with RRMP regarding respondents' relationships and told RRMP that respondent-father had sexual relations with other women. In addition, RRMP was aware of the inappropriate picture and text message sent to another woman by respondent-father. When respondent-father discovered that RRMP reported these things, he retaliated against her by ignoring her at parenting time. There was another instance in which respondent-father told RCRP to lie to his foster parents about minor damage he caused to the foster parents' property during a parenting time visit, which confused RCRP due to the lessons he learned in therapy about honesty.

Throughout the course of the proceedings, the service providers continued to report that all of the children struggled with boundaries regarding sexuality, personal contact, and social skills. They reported that respondents did not direct the children to act appropriately during parenting time visits. Respondents also failed to provide proper care and custody of the children during the overnight visits by having inappropriate guests or visitors. Therefore, it is clear that respondents did not benefit from the services provided through their treatment plan. *In re White*, 303 Mich App at 710. Thus, there is no reasonable expectation that respondents will be able to provide proper care and custody of the children within a reasonable amount of time. MCL 712A.19b(3)(g).

### D. MCL 712A.19b(3)(j)

The trial court did not err in terminating respondents' parental rights related to the children under MCL 712A.19b(3)(j). A trial court may terminate a respondent's parental rights under MCL 712A.19b(3)(j) if the trial court finds by clear and convincing evidence that "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent." In addition, "a parent's failure to comply with the terms and conditions of his or her service plan is evidence that the child will be harmed if returned to the parent's home." *In re White*, 303 Mich App at 711.

The prior sexual abuse and continuing sexual activity between the children was the most concerning issue for the trial court. Despite the children's removal from the environment containing the sexual predator, paternal uncle, there were continuous discoveries about inappropriate sexual activities in the past and present. Given the evidence of inappropriate sexual activity in the past and the lack of supervision of the children, there is clear and convincing evidence that there is a reasonable likelihood that the children would be harmed if they were returned to respondents' care and more sexual abuse or sexual activity occurred. RRMP was sexually abused while living under the same roof as respondents. The children reported that paternal grandmother, rather than respondents, was responsible for taking care of the children. Respondents were not present in the home because they were working. In this living situation, RRMP was sexually abused by paternal uncle, and it was reported that respondent-mother was aware that RLP and RCRP had sexual relations. It was also reported that the children walked in on respondents having sexual intercourse while living in paternal grandmother's home, and that respondents had sexual intercourse in front of the children in a vehicle. This demonstrates that respondents lacked proper decision making skills and proper boundaries prior to removal of the children.

After the children were removed, respondents continued to make poor choices. Respondent-father admitted to having a sex addiction, and respondents sought different sexual partners. These partners were brought around the children during parenting time. Respondents also allowed RRMP's boyfriend to spend the night in their home, despite RRMP being a victim of sexual abuse. It was reported that RLP and RCRP engaged in oral sex while they were living in the foster home, and respondent-father was made aware of this activity and did not immediately report it. The service providers continuously asserted that the children would be at risk of further victimization if they were returned to respondents' care. Only one respondent would be responsible for all of the children at a time due to their alternating work schedules, and this is not adequate supervision for these children given their histories of sexual abuse and sexual conduct. The service providers also asserted that the children could become perpetrators of sexual abuse should they be returned to respondents' care and are not properly supervised. Thus, the trial court did not err when it determined that this statutory ground existed to terminate respondents' parental rights.

## II. BEST INTERESTS

Respondents argue that it was not in the children's best interests to terminate their parental rights because they are bonded to the children and they complied with their service plan. We disagree.

A trial court must order the termination of a respondent's parental rights if the trial court finds by a preponderance of the evidence based on the record as a whole that termination is in the child's best interest. *In re White*, 303 Mich App at 713. This Court reviews the trial court's determination of a child's best interests for clear error. *Id.*

MCL 712A.19b(5) provides, "[i]f the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." The prosecution must prove that termination is in the children's best interests by a preponderance of the evidence. *In re Schadler*, 315 Mich App at 408. A trial court must weigh all of the evidence in making a best interest determination. *In re White*, 303 Mich App at 713. This includes many factors, including " 'the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home,' " as well as "a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *Id*. at 713-714 (citation omitted).

The trial court found that termination was in the children's best interests for various reasons. The children had a history of sexual abuse and sexual activity amongst themselves while in respondents' care. If returned to respondents' care, the children would be at risk of further trauma or victimization, or could possibly become perpetrators of sexual abuse themselves. The children suffer from PTSD and have major cognitive impairments. The trial court did not clearly err when it found that termination was in the children's best interest based on the findings of the referee.

-6-

The evidence demonstrates that the children were bonded to respondents, and that respondents were in compliance with their treatment plans. Respondents attended visitation, obtained housing, maintained employment, and attended parenting classes and counseling. However, respondents did not demonstrate an ability to parent their children appropriately irrespective of their compliance with the treatment plan.

Although respondents attended trauma-based parenting classes, they made poor decisions regarding the parenting of their children. They drove past paternal grandmother's house, the location of the past trauma. They allowed questionable individuals to visit or reside in their home when they had unsupervised overnight visits with the children. This Court has considered a respondent's choice to associate and live with individuals who have criminal records as a factor in determining best interests. See *In re Medina*, 317 Mich App 219, 239; 894 NW2d 653 (2016). Respondents were aware that both individuals they allowed in the home during visitation had criminal records. Respondent-father encouraged RCRP to lie to his foster parents. Respondents made various poor decisions regarding sexual boundaries and their children. It was reported that they engaged in sexual activity in front of the children in a vehicle and at paternal grandmother's home in unlocked rooms. RRMP also reported that respondent-father looked at pornography and masturbated in front of her. The case workers often reported that there was inappropriate touching between respondents and the children, and amongst the siblings. Respondents did not step in to deter such behavior during visitation. All of the children suffer from PTSD or have a cognitive impairment, and respondents have not demonstrated that they would be able to provide the proper supervision and services that these children would need due to these issues. The referee's recommendation discussed each child's emotional and psychological issues, determining that respondents would be unable to meet the specialized needs of each child. For instance, RCRP suffers from PTSD, constantly thinks about sex, and reports having urges to have sex with the girls and boys at his school. Moreover, he did not have any understanding of sexual boundaries. To a lesser extent, RLP and RWP were exhibiting similar behaviors. Considering the issues with the youngest three boys, it would be in the best interest of the youngest daughter, RMP, to terminate respondents' parental rights. Respondents claimed they would work alternating schedules, leaving only one parent at a time to supervise all five children and provide for their special needs. The children receive services in foster care, such as counseling and special education at school, which are required to address these issues.

In addition, it is not in the children's best interests to all live in one household, or to share bedrooms within that home. It was discovered that RRMP and REP had sexual relations when they lived together. It was also discovered that RLP and RCRP engaged in oral sex before and after removal, and RCRP had to be removed from the foster home and put in residential placement due to his behavioral tendency to act out sexually. RCRP reported having sex with each of his siblings. The advantage of foster care is that the children will be separated so they do not engage in further sexual activity. The risk of further sexual relations amongst the siblings would be too great should they be returned to respondents' care and reside under the same roof. All of the children are in the process of adoption, except RRMP, due to her age. Adoption would

benefit the children as it would provide permanency, stability, and finality. *In re White*, 303 Mich App at 713. Thus, termination of respondents' parental rights was in the children's best interests. MCL 712A.19b(5).

Affirmed.

/s/ Michael J. Talbot
/s/ Jane M. Beckering
/s/ Thomas C. Cameron