*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* K. K. GIBBS, Minor.

UNPUBLISHED
July 18, 2019

No. 347510
Saginaw Circuit Court
Family Division
LC No. 18-035415-NA

Before: M. J. KELLY, P.J., and MARKEY and GLEICHER, JJ.

PER CURIAM.

Respondent appeals by right the trial court order terminating her parental rights to her minor son, KG, under MCL 712A.19b(3)(c)(*i*) and MCL 712A.19b(3)(j).[1] Because there are no errors warranting reversal, we affirm.

## I. BASIC FACTS

Respondent was diagnosed with schizophrenia in 2007. It appears that respondent was taking medication to treat her schizophrenia, but when she became pregnant with KG she stopped taking it on her doctor's recommendation. In January 2018, she gave birth to KG. Shortly after his birth, she was involuntarily committed to White Pine for mental-health treatment because she was experiencing hallucinations and was paranoid that the staff at the hospital was attempting to poison her and KG. Because of respondent's mental-health issues, the Department of Health and Human Services (DHHS) petitioned the trial court to remove KG and his 17-year-old sister, MJ, from respondent's care and to take jurisdiction over both children.[2] In March 2018, respondent pleaded to jurisdiction and agreed to a case services plan that required her to address her mental health. The record reflects that respondent made some progress toward reunification by completing a psychiatric evaluation, attending follow-up psychiatric appointments with Dr. Semhal Abbay, completing a psychological evaluation with Dr. David

---

[1] The identity of KG's father is unknown.

[2] The trial court did not terminate respondent's parental rights to MJ.

Breyer, taking medication as prescribed, meeting with her case manager, submitting to drug screens, attending mental health court, substantially complying with the med-drop program, participating in parenting classes, and attending parenting time. However, because of ongoing concerns regarding her mental health, on October 4, 2018, a supplemental petition was filed seeking termination of respondent's parental rights. Following a termination hearing, the court found that there was clear and convincing evidence to terminate respondent's parental rights to KG under MCL 712A.19b(3)(c)(*i*) and MCL 712A.19b(3)(j), but that termination was not appropriate under MCL 712A.19b(3)(g). The court also found by a preponderance of the evidence that termination of respondent's parental rights was in KG's best interests, so it ordered the termination of respondent's parental rights.

## II. STATUTORY GROUNDS

### A. STANDARD OF REVIEW

Respondent argues that the trial court clearly erred by finding statutory grounds to terminate her parental rights. In order to terminate parental rights, the trial court must find that at least one of the statutory grounds for termination has been met by clear and convincing evidence. MCL 712A.19b(3); *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). "We review the trial court's determination for clear error." *Id*. "A finding is 'clearly erroneous' if, although there is evidence to support it, we are left with a definite and firm conviction that a mistake has been made." *In re HRC*, 286 Mich App 444, 459; 781 NW2d 105 (2009).

### B. ANALYSIS

The trial court terminated respondent's parental rights under MCL 712A.19b(3)(c)(*i*) which provides:

> (3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:
>
> * * *
>
> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:
>
> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

In this case, more than 182 days elapsed between the issuance of the dispositional order and the termination hearing. The primary condition leading to adjudication was respondent's mental illness. Following the termination hearing, the court found that the conditions leading to adjudication continued to exist. The record amply supports the court's finding in that regard.

Dr. Abbay, respondent's psychiatrist,[3] testified that although respondent was taking her medication as directed,[4] she continued to demonstrate paranoid thoughts insofar as she consistently expressed her belief that she was being tracked and followed by people who were out to harm her.[5] In addition, respondent testified that she was "attacked" and "made" to go to White Pine after the hospital staff kept sending people to disturb her rest after KG was born. Then, when asked why she was no longer in mental health court, respondent explained that transportation was an issue because if she goes to the bus stop she was being "trespassed on and attacked." She elaborated that she was concerned about her family members turning on her, screaming and hollering in her yard, throwing stones at her windows, and trespassing in her yard. Later, she stated that she was not paranoid because she had been attacked by people who are "trespassing on her" and she recounted an incident where homeless people she was helping at her house stabbed her with forks. Finally, respondent stated that "they" were probably even killing people), and she believed that her family members were "probably all standing in the parking lot now."[6]

Moreover, Dr. Abbay also testified that respondent had expressed concerns that people in the court system were "out to get her" and to deny her access to the child; in her testimony, respondent stated that "ya'll" and "they"[7] would be "judged" for the actions taken in the case. Respondent also spoke about her belief that the hospital had conspired to take her child away from her, that her service providers had lied during their testimony, and that she did not like meeting "ya'll people," but she would if it was necessary to be reunited with her son. In sum, based on the record before the trial court, there was clear and convincing evidence supporting the court's finding that respondent's mental health continued to pose a barrier to reunification.

There was also evidence that the conditions could not be rectified in a reasonable time considering KG's age. At the time of termination, KG was just under a year old and he had been in foster care since approximately one day after his birth. Respondent had been receiving

---

[3] Respondent testified that, following Dr. Abbay's testimony at the termination hearing, she fired her as a psychiatrist because Dr. Abbay's testimony was not accurate and Dr. Abbay had lied.

[4] Respondent was participating in and compliant with a med drop program. Under the program someone would go to respondent's house once a day to deliver respondent her medication and ensure that she took it.

[5] When Dr. Abbay stated her concern about respondent refusing help from her daughter and her brother because of her paranoia, respondent interrupted the proceedings, stating "Because they follow me around everywhere I go."

[6] Dr. Abbay testified that respondent also continued to experience paranoid delusions such as her belief that her mother and her case manager were having sex with KG's father. In her testimony, respondent stated that it was not any of "your business" whether her case worker was having sex with her boyfriend and that it was not any of the lawyer's business whether respondent's mother was having sex with the father of one of respondent's babies.

[7] Although not expressly stated, it appears that "they" and "ya'll" were references to the court staff, the lawyers involved, and respondent's case workers.

services to address her mental health since KG's removal,[8] but she had not demonstrated any benefit and her care providers were concerned that, in the absence of a court order, respondent would stop taking the medication prescribed to treat her schizophrenia.

On appeal, respondent argues that the statutory provisions are not satisfied because a mere diagnosis of schizophrenia and an intellectual disability is insufficient to terminate a parent's parental rights. She points out that her daughter, MJ, and her brother both testified that they would be willing to provide her with support. Respondent's argument, however, does not address her specific circumstances. Dr. Abbay testified that generally schizophrenia does not preclude a parent from being able to care for a child. However, although Dr. Abbay also indicated that a support system[9] could help a schizophrenic individual parent safely, she added that she did not know if respondent would actually accept help given that she exhibited paranoia toward both her case workers and her family members. In respondent's case, Dr. Abbay explained that respondent did not acknowledge her schizophrenia and had refused to participate in recommended cognitive behavioral therapy. Dr. Abbay testified that respondent initially made it clear that she was "not interested" in being seen by a psychiatrist, and at every follow up appointment, respondent has clarified that she will comply with the court order, but that she has no interest beyond that point. Dr. Abbay also opined that if respondent did not gain insight into her mental illness, then she would stop taking her medication if she was not being held accountable by court order.

Moreover, although respondent testified that Dr. Abbay was a liar and had lied during her testimony, and although respondent testified that she acknowledged she was diagnosed with schizophrenia, respondent's testimony made clear that she did not actually believe she required treatment. The following colloquy is informative of respondent's beliefs:

> *Q.* And do you acknowledge that you have a diagnosis of schizophrenia?
>
> *A.* Yes, I do.
>
> *Q.* And what does that mean to you?

---

[8] On appeal, respondent contends that there was a delay of "several" months before she started receiving services. However, the record reflects that at approximately the same time as KG was removed from her care, respondent began receiving inpatient mental health care at White Pine. Further, she was also participating in mental health court before and after KG's birth. Accordingly, the record supports that respondent was receiving mental-health treatment and services to address her mental health from the outset of the case, notwithstanding that she did not receive a referral to some of the services offered until three or four months had elapsed.

[9] On appeal, respondent asserts that no one addressed what type of support would be needed or what type of support they could provide. However, the testimony was that in respondent's case, given her paranoia toward her family, respondent would not accept help from her daughter and her brother, notwithstanding that they were willing to provide support.

-4-

*A.* That means that I'm diagnosed with something that I don't—I don't—I'm just diagnosed with I have a mental illness, but I don't acknowledge I have a mental illness around anymore.

*Q.* What does that mean?

*A.* That mean I don't act as if I have a mental illness or however that's supposed to be, but I gotta act as if I have a mental illness but I am diagnosed with one.

*Q.* Do you believe that you have a mental illness?

*A.* Well, yes. They said that I'm diagnosed with one, so I just go along with it. Yes, I do have a mental illness.

Respondent also testified that she did not think she needed medication, that she never did anything warranting a commitment to White Pine, that she did not believe she needed a psychiatrist, that she does not need any services, and that she does not like having people involved in her business. She clarified that she takes medication now that she had been "labeled" as having a mental problem, but that she does not think she needs to take medication. Throughout her testimony, respondent made it clear that she was willing to do whatever it takes to get her child back.

In sum, although respondent argues that a mere diagnosis of schizophrenia is insufficient to warrant termination, in this case, the record reflects that the court relied on more than the fact that respondent was diagnosed with schizophrenia. Instead, the court relied on the testimony showing that respondent's mental-health problems were continuing despite the fact that she had been in treatment for approximately one year, that respondent did not believe that she needed medication because she did not believe she had a mental-health problem, and that respondent was reasonably likely to discontinue treatment if her child were returned to her care. Moreover, given the inability to predict a timeframe for resolving respondent's mental-health problems, at the time of termination, there was nothing on the record suggesting that the problem could, in fact, be rectified in a reasonable time considering KG's age. Accordingly, on this record the trial court did not clearly err by finding termination was proper under MCL 712A.19b(3)(c)(*i*).[10]

---

[10] Because termination was proper under MCL 712A.19b(3)(c)(*i*), we decline to address whether the court erred by also terminating respondent's parental rights under MCL 712A.19b(3)(j). See *VanDalen*, 293 Mich App at 139 (only one ground for termination of a parent's parental rights need be established).

## III. BEST INTERESTS

## A. STANDARD OF REVIEW

Respondent argues that termination of respondent's parental rights was not in KG's best interests. An appellate court reviews a trial court's best interests decision for clear error. *In re Jones*, 286 Mich App 126, 129; 777 NW2d 728 (2009).

## B. ANALYSIS

"If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). "[W]hether termination of parental rights is in the best interests of the child must be proven by a preponderance of the evidence." *In re Moss Minors*, 301 Mich App 76, 90; 836 NW2d 182 (2013). "In deciding whether termination is in the child's best interests, the court may consider the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (citations omitted).

The trial court found that respondent was consistent with her parenting time and had developed a strong bond with KG. However, the court explained:

> A parental bond is not enough when presented with the overwhelming evidence, most of it from [respondent's] own statements and actions during the case, that she does not have insight into her mental illness and cannot safely parent her son. Her paranoia and delusions are not fully controlled by her medication, medication which [respondent] does not believe she needs. She also does not believe she needs therapy or counseling or continued psychiatric appointments either. [Opinion, pp 16-17.]

The court also found that KG needed safety, stability, and permanency, which could be provided by his foster care placement, but could not be provided by respondent while she was in the grip of her paranoid schizophrenia. KG was approximately one year old. Although respondent actively participated in the offered services, respondent had failed to benefit from them. She continued to act paranoid. There were a number of times during the termination hearing, when she would interrupt witnesses by calling them liars or demanding that they tell the truth. Respondent asserts that her daughter and her brother could have provided support and may have been able to serve as a guardian for KG. However, in light of respondent's paranoia toward her family members, who she believed were trespassing on her and attacking her, respondent's case workers expressed concerns about the benefit of family support. Moreover, although respondent asserts she could have benefited from more time, the best-interests determination looks to the child's needs. KG needed permanence and stability. There was nothing on the record suggesting that respondent could provide him with either even if she were given another six or nine months to do so. On the record before this Court, the trial court did not err by finding termination of respondent's parental rights was in KG's best interests.

Affirmed.

/s/ Michael J. Kelly
/s/ Jane E. Markey
/s/ Elizabeth L. Gleicher