*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re PEREZ, Minors.

UNPUBLISHED
January 26, 2023

No. 361904
Midland Circuit Court
Family Division
LC No. 20-005198-NA

Before: PATEL, P.J., and BORRELLO and SHAPIRO, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating his parental rights to the minor children, MMLP and MAP, under MCL 712A.19b(3)(c)(*i*) (conditions leading to adjudication continue to exist); (g) (failure to provide proper care or custody); and (j) (reasonable likelihood of harm if returned to parent). For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

In April 2021, petitioner, the Department of Health and Human Services (DHHS), alleged that respondent routinely failed to get the children to scheduled parenting time,[1] failed to adhere to "safe sleep guidelines" for MAP, failed to comply with drug screens, and permitted unknown people to live in his home with the children. Initially, the court denied DHHS's request to authorize the petition to remove the children from respondent's care. In May 2021, DHHS filed another petition against respondent, alleging that respondent was arrested for domestic violence in May 2021, had weapons in his home, and was using methamphetamine. The petition was authorized, the children were removed from respondent's care, and respondent was granted supervised parenting time.

A bench trial was held on June 30, 2021, to determine whether the court could exercise jurisdiction over the children. At the trial, a foster care worker testified that when she picked up

---

[1] DHHS had previously filed a petition against the children's mother in September 2020, and the children were removed from their mother's care and placed with respondent on September 28, 2020. The children's mother is not involved in this appeal.

the children, "[t]hey were dirty and smelled of sour milk, and they didn't appear to be very well cared for." There was also a concern about respondent's girlfriend living in his house with the children because she had a significant history with Child Protective Services (CPS) and a documented history of substance abuse. The court exercised jurisdiction over the children pursuant to MCL 712A.2(b)(2) (unfitness of parental home), continued respondent's supervised parenting time, and ordered DHHS to engage in reasonable efforts toward reunification. DHHS created a case service plan, which the trial court adopted. Respondent was ordered to participate in and benefit from (1) parenting classes, (2) individual therapy, (3) family therapy, and (4) substance abuse treatment. Respondent was also ordered to complete a psychological evaluation, submit to random drug screenings, maintain a legal source of income and suitable housing, and regularly attend visits with the children. Respondent's participation in the case service plan was poor, and he failed to cooperate or communicate with DHHS throughout the case. Respondent regularly attended parenting time, but did little else that was required of him. Respondent's parenting time was ultimately suspended when he took his children on an outing with his girlfriend, who the court explicitly ordered was not allowed around the children.

In December 2021, DHHS filed a petition requesting that the trial court terminate respondent's parental rights to the children under MCL 712A.19b(3)(c)(*i*), (g), and (j). At the termination hearing, the caseworker, a community mental health therapist, and a DHHS homemaker all testified about respondent's lack of progress for a majority of the proceeding. Both the therapist and the caseworker also testified that termination was in the children's best interests because of respondent's lack of participation and because the children were doing well at their foster home. After the close of proofs, the attorney referee released a written opinion and recommended that the trial court terminate respondent's parental rights because DHHS had established the cited statutory grounds by clear and convincing evidence and termination was in the children's best interests. Relying on the referee's written opinion, the trial court terminated respondent's parental rights in June 2022. This appeal followed.

II. ANALYSIS

Respondent argues that the trial court clearly erred by finding clear and convincing evidence supporting the statutory grounds cited in support of termination. Respondent also argues that the trial court clearly erred by finding that termination of respondent's parental rights was in the children's best interests.

A. STATUTORY GROUNDS FOR TERMINATION

Respondent argues that the trial court clearly erred by finding statutory grounds for termination of his parental rights.

"[T]o terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). To be clearly erroneous, a trial court's determination must be more than possibly or probably incorrect. *In re Ellis*, 294 Mich App 30, 33; 817 NW2d 111 (2011). "A finding is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake has been made." *Id*. This Court gives regard "to the special opportunity of the trial court to judge the credibility of the

witnesses who appeared before it." MCR 2.613(C). "Only one statutory ground need be established by clear and convincing evidence to terminate a respondent's parental rights, even if the court erroneously found sufficient evidence under other statutory grounds." *In re Ellis*, 294 Mich App at 32. If this Court concludes that the trial court did not clearly err by finding one statutory ground for termination of respondent's parental rights, this Court does not need to address the additional grounds. *In re HRC*, 286 Mich App 444, 461; 781 NW2d 105 (2009).

We conclude that the trial court did not clearly err by finding that termination was warranted under MCL 712A.19b(c)(*i*), which provides:

> The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:
>
> * * *
>
> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds . . . the following:
>
> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

At the time of termination, 182 or more days had elapsed since the issuance of the initial dispositional order with respect to respondent. See MCL 712A.19b(3)(c). Additionally, for the following reasons, we conclude that respondent failed to rectify the conditions that led to the adjudication despite being provided with services that were aimed at facilitating reunification.

The children were removed from respondent's care in part because of his issues with domestic violence. A DHHS foster care worker testified that the police had gone to respondent's house on multiple occasions for domestic violence, and respondent was subsequently arrested for domestic violence. Respondent's girlfriend told the foster care worker that she "feared for her life" because of respondent's violent behavior. Respondent failed to address his behavioral issues because he failed to complete a psychological evaluation and continuously attend individual therapy.

Respondent was also required to maintain a safe and clean home for the children, and he failed to do so. The foster care worker testified that there were instances of unknown individuals living in the home for short periods of time and using drugs in the home. The foster care worker further testified that when the children were picked up during an emergency removal, "[t]hey were dirty and smelled of sour milk, and they didn't appear to be very well cared for." Both the foster care worker and the caseworker testified that respondent's girlfriend may have been still living at his house despite her extensive history with CPS and the fact that the trial court ordered she should not be around the children.

Respondent also failed to resolve his substance abuse issues. The caseworker testified that respondent consistently failed to call in for his required drug screens. The foster care worker testified that respondent and his girlfriend frequently fought about his methamphetamine use. She

-3-

further testified that respondent failed to comply with over 80 percent of his required drug screens and that when he did comply, he tested positive for methamphetamine and THC. A community mental health therapist testified that respondent was offered a parenting group specifically aimed at parents who struggle with substance abuse, but he was dropped for failing to attend. Additionally, the foster care worker testified that respondent admitted himself into a substance abuse program, but he voluntarily left it after a couple of days. Thus, "the totality of the evidence amply supports" that respondent "had not accomplished any meaningful change in the conditions" that led to adjudication. See *In re Williams*, 286 Mich App 253, 272; 779 NW2d 286 (2009).

The record also supports the trial court's finding that there was no reasonable likelihood that respondent would rectify the conditions within a reasonable time. See MCL 712A.19b(3)(c)(*i*). Respondent lacked commitment throughout the proceedings, was unable to demonstrate and maintain sobriety, and refused to communicate with DHHS throughout the entire case. At the time of termination, the children had been out of respondent's care for nearly a year. Multiple DHHS workers testified that a variety of accommodations were offered to respondent to overcome any transportation or scheduling issues he may have had, but respondent remained noncommunicative and uninvolved. Given respondent's history, the caseworker did not believe that respondent would participate in services if given additional time. Accordingly, the record supports the conclusion that there was no reasonable likelihood that respondent would rectify the conditions that led to adjudication within a reasonable time. See MCL 712A.19b(3)(c).

Because we conclude that the trial court did not clearly err by finding that termination was warranted under MCL 712A.19b(3)(c)(*i*), we need not address whether it erred by finding that termination was warranted under subsections (g)[2] and (j). See *In re HRC*, 286 Mich App at 461.

## B. BEST INTERESTS

Respondent argues that the trial court clearly erred by finding that termination of respondent's parental rights was in the children's best interests.

"If the court determines that one or more statutory grounds for termination exist and that termination is in the child's best interests, the court must enter an order terminating the respondent's parental rights and order that additional efforts for reunification not be made." *In re Ferranti*, 504 Mich 1, 16; 934 NW2d 610 (2019), citing MCL 712A.19b(5). "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). The trial court's ruling regarding best interests are reviewed for clear error. *In re Schadler*, 315 Mich App 406, 408; 890 NW2d 676 (2016).

---

[2] We note, however, that the trial court incorrectly applied MCL 712A.19b(3)(g) by failing to address whether respondent was financially able to provide care and custody for his children. Nevertheless, the error was harmless because only one statutory ground need be established. See *In re Ellis*, 294 Mich App at 32.

"The trial court should weigh all the evidence available to determine the children's best interests." *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). When determining whether termination is in the best interests of the child, the court should place its "focus on the child rather than the parent." *In re Schadler*, 315 Mich App at 411. In making its determination, the court may consider a variety of factors, including "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re White*, 303 Mich App at 713-714. "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *Id*. The trial court must determine each child's interests individually, but it is not required to make individual best-interest findings for each child when the best interests of the children do not significantly differ. *Id*. at 715-716.

Respondent heavily emphasizes the fact that he regularly attended parenting time and acted appropriately during those times, and that he maintained housing and employment until his incarceration. However, the trial court should consider a wide variety of factors and weigh *all* of the available evidence. *Id*. at 713-714. The foster care worker testified that respondent had domestic violence issues, the police had gone to his house multiple times, and he was subsequently arrested. Respondent and his girlfriend frequently fought about respondent's substance abuse, and his girlfriend feared for her life. Respondent failed to comply with over 80 percent of his required drug screens and when he did comply, he tested positive for substances. Further, respondent had been incarcerated since December 2021, and, at the time of the termination hearing, there was no estimated release date.

The caseworker, community mental health therapist, and foster care worker each testified that the foster home would provide permanency. The therapist also testified that the home would provide safety, consistency, and stability, and the foster care worker testified that the children were bonded with their foster parents. The referee noted that while respondent and the children "had a stronger bond at the outset of this case, any bond has undoubtedly deteriorated over time. [Respondent] has done nothing to have his parenting time reinstated, has not inquired about the [c]hildren and hasn't even attempted to see them since August 16, 2021."

Respondent also argues that termination was not in the children's best interests because they were placed with his mother in the past, and they could have been placed with his mother again. Respondent's argument is without merit. A child's placement with a member of a respondent's family is a factor to be considered when determining whether termination was in the children's best interests, and such a placement typically weighs against termination. *In re Mason*, 486 Mich 142, 164; 782 NW2d 747 (2010). On appeal, respondent argues that there was "nothing inappropriate" about his mother's home, and that "the only issue was the unauthorized parenting time." While respondent's unauthorized parenting time was one of the reasons for removal, it was not the *only* reason. A submitted court report indicated that the children were removed because respondent's mother was not adequately communicating with DHHS; she allowed respondent's sister to be around the children, despite abuse allegations; she allowed respondent to visit the children unsupervised; and she could not care for the children five days a week when she worked and had no steady daycare set up for the children.

Given respondent's issues with substance abuse and domestic violence, his incarceration, the children's young ages and need for permanency, the fact that they were doing well in their foster placements, and the likelihood of adoption, the trial court did not clearly err by finding that it was in the children's best interests to terminate respondent's parental rights.

## III.  CONCLUSION

For the reasons stated, the trial court's order terminating respondent's parental rights to the children is affirmed.

/s/ Sima G. Patel
/s/ Stephen L. Borrello
/s/ Douglas B. Shapiro