*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* EDWARDS, Minors.

UNPUBLISHED
May 18, 2023

No. 363902
Clare Circuit Court
Family Division
LC No. 21-000032-NA

Before: GLEICHER, C.J., and HOOD and MALDONADO, JJ.

PER CURIAM.

Respondent appeals by right the trial court's order terminating her parental rights to the minor children, KNE and KCE, pursuant to MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist), (c)(*ii*) (failure to rectify other conditions), (g) (failure to provide proper care and custody), and (j) (reasonable likelihood of harm if returned to parent). We affirm.

## I. BACKGROUND

### A. ADJUDICATION AND DISPOSITIONAL PHASES

In June 2021, the Department of Health and Human Services (DHHS) alleged that respondent severely abused drugs, neglected her children, and inadequately supervised her children. DHHS requested that the trial court remove the children from respondent's care and exercise jurisdiction. The petition was authorized, the children were removed, and the court granted respondent supervised parenting time.

An adjudication hearing was conducted and respondent pleaded to jurisdiction pursuant to MCL 712A.2(b)(1) and (b)(2). In its petition, DHHS alleged that respondent used methamphetamine and heroine, that she failed to properly supervise the children, and that she had been charged with possession of methamphetamine and fourth-degree child abuse following an incident in which she failed to supervise the children. Respondent admitted to some of the allegations in the petition and pleaded *nolo contendere* to others. The trial court exercised jurisdiction, continued respondent's supervised parenting time, and ordered DHHS to engage in reasonable efforts toward reunification. DHHS created a case service plan, which the trial court adopted. The court ordered respondent to participate in and benefit from substance abuse

treatment, parenting classes, and individual therapy. The court also ordered respondent to complete a psychological evaluation, submit to random drug screenings, maintain a legal source of income and suitable housing, and participate in parenting time.

Through most of this case's duration, respondent barely participated in the case service plan, and she failed to communicate with DHHS. Respondent was unable to engage in parenting time for the first 11 months of the case because she pleaded guilty to fourth-degree child abuse, and there was a no-contact order between her and her children. The no-contact order in respondent's criminal matter was eventually lifted so that she could engage in parenting time. However, two months later, the trial court suspended respondent's parenting time because respondent was reincarcerated and because there were reports that, following respondent's parenting time, the children began exhibiting unusual behavior.

## B. TERMINATION HEARING

In September 2022, DHHS filed a supplemental petition requesting that the trial court terminate respondent's parental rights to the children pursuant to MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), and (j). At the termination hearing on October 20, 2022, respondent testified that she regularly used drugs while the children were in her custody and throughout the duration of the case. Respondent stated that she voluntarily admitted herself into a substance abuse treatment facility on two separate occasions but that she continued to use drugs after she completed the programs. It was not until late May 2022 that she became sober. Respondent testified that she had not abused drugs since May 28, 2022: "This is the longest amount of time that I've kept sobriety under my belt and I—I feel as more time goes by, the easier it gets." Respondent testified that it was primarily her substance abuse that resulted in her children being brought into DHHS's care and that her drug use impacted her parenting ability "[t]o some extent," but her children were her "biggest motivation to stay sober[.]" The case manager testified that respondent was "participating with a . . . Suboxone physician weekly" to monitor and maintain her sobriety. The case manager further testified that respondent was "doing what she needs to on meeting those [substance abuse counseling] requirements, going to weekly appointments as well as [Narcotics Anonymous] groups."

Respondent and her case manager testified that respondent never completed a psychological evaluation or parenting classes. However, respondent testified that she enrolled in a treatment program a few days prior to the hearing, that the treatment program involved parenting classes, but that she had not completed any classes yet. She further testified that she had sought a psychological evaluation but was "waiting for a referral." The caseworker confirmed this, testifying that respondent had "a referral going" for an evaluation but that the caseworker "did not have confirmation of being able to get [respondent] into that facility until after the petition was filed," and she "was waiting to see what happened before [she] moved forward further with that evaluation[.]" Both respondent and her caseworker testified that respondent did not begin individual counseling until approximately three months before the termination hearing.

Respondent admitted that she never obtained appropriate housing, and she stated that she primarily supported herself by living in substance abuse treatment facilities and homeless shelters because they provided everything that she needed. About a month before the termination hearing

she did obtain employment, but she had only worked a total of four days because she fell ill with Covid-19 shortly after being hired.

The caseworker testified that "there was minimal to no contact between [respondent] and workers" until approximately April 2022. There were instances when respondent "did not answer the doors" for her caseworker when she attempted to pick respondent up for parenting time. In addition, respondent periodically "did not confirm parenting time" or only stayed at parenting time for "30 to 45 minutes of the two hours." The case manager testified that since she became respondent's case manager in August 2022, she had communicated with respondent "[a]t least weekly." The caseworker testified that respondent's "compliance with the parent-agency treatment plan" was "good," but respondent's compliance with the plan did not "become good" until approximately three months prior to the termination hearing. Respondent showed approximately "11 months of non-compliance" since the children were removed from her custody.

Overall, the case manager testified that respondent showed a "lack of engagement" in parenting time when it was available to her. Respondent, however, testified that she could not engage in parenting time with KNE and KCE "for the first 11 months of this case" because there was "a no contact order with [her] children" as a result of her fourth-degree child abuse charge. Respondent further testified that her parenting time was "suspended within two months of it being turned on." The caseworker testified that she provided respondent with envelopes, paper, and stamps so that respondent could continue communicating with the children after her face-to-face parenting time was suspended, and "at least five or six letters" from respondent were sent to the children while respondent was incarcerated. Respondent testified that she had not seen KNE or KCE since approximately May 15, 2022. When respondent was able to visit her children, she brought various supplies with her, including "diapers, wipes, snacks, juice, and candy." Respondent did not bring the children's clothes with her because she "didn't have any."

Both the case manager and the caseworker testified that termination was in the children's best interests because respondent failed to rectify any of her barriers in a reasonable amount of time; the children suffered a significant amount of chronic trauma from respondent's parenting; and the children were doing well in their foster home. The caseworker testified that respondent clearly loved her children, but "there has been a demonstration of a weakening of their bond due to the length of time that they've been in care and the lack of contact between the [three] of them." However, respondent testified that she had a bond with her children, loved her children, and was "in a position to care for [her] children."

The trial court made oral findings at a separate hearing on November 3, 2022. It found that DHHS had established grounds for termination under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), and (j) by clear and convincing evidence and that termination was in the children's best interests. This appeal followed.

## II. DISCUSSION

Respondent argues that the trial court clearly erred by finding clear and convincing evidence supporting the statutory grounds cited in support of termination. We disagree.

"[T]o terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). To be clearly erroneous, a trial court's determination must be more than possibly or probably incorrect. *In re Ellis*, 294 Mich App 30, 33; 817 NW2d 111 (2011). "A finding is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake has been made." *Id*. This Court gives regard "to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." MCR 2.613(C). "Only one statutory ground need be established by clear and convincing evidence to terminate a respondent's parental rights, even if the court erroneously found sufficient evidence under other statutory grounds." *Ellis*, 294 Mich App at 32. If we conclude that the trial court did not clearly err by finding only one statutory ground for termination of respondent's parental rights then it is unnecessary to address the additional grounds. *In re HRC*, 286 Mich App 444, 461; 781 NW2d 105 (2009).

## A.  SUBDIVISION (G)

At the outset, we note that the trial court clearly erred by citing an outdated version of Subdivision (g), but this error is not dispositive.

MCL 712A.19b(3)(g) was amended effective June 12, 2018. See 2018 PA 58. The current version of the statute, which was in effect at the time of the termination order, provides that termination is appropriate if "[t]he parent, *although, in the court's discretion, financially able to do so*, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age." MCL 712A.19b(3)(g) as amended by 2018 PA 58 (emphasis added). However, both respondent and the trial court relied on the pre-amendment version of MCL 712A.19b(3)(g) which stated that termination was appropriate if "[t]he parent, *without regard to intent*, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age." (Emphasis added.)

In this case, the trial court applied the pre-amendment version of MCL 712A.19b(3)(g).[1] The trial court found that subsection (g) was satisfied by clear and convincing evidence because the children had "been in foster care for approximately 15 months and the issues that brought them to the [c]ourt's attention . . . have not been rectified." When concluding that subdivision (g) was satisfied, the court would necessarily had to have found that respondent was "financially able" to provide proper care and custody for her children. See MCL 712A.19b(3)(g). However, the court seemingly concluded that respondent was financially *unable* to provide proper care and custody for her children:

---

[1] While respondent does not raise this on appeal, we deem it important to address.

-4-

Even those most basic needs of children, and—and a parent's income in order to provide for their financial needs and material needs, cannot be met by this mother . . . .

\* \* \*

[Respondent] does not have adequate housing. She does not have adequate income.

Because the trial court failed to comply with the mandates of the revised statute, we cannot affirm the trial court's findings pertaining to Subdivision (g). However, because the trial court did not err by finding that termination of respondent's parental rights was appropriate under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), and (j), this error is not dispositive because only one statutory ground for termination must be proven. See *Ellis*, 294 Mich App at 32.

In conclusion, the trial court erred by terminating respondent's parental rights pursuant to an outdated version MCL 712A.19b(3)(g). While it is alarming that the trial court was unaware of an amendment that became effective more than four years prior to these termination proceedings, this error does not warrant reversal.

## B. SUBDIVISION (J)

The trial court's finding that DHHS established MCL 712A.19b(3)(j) by clear and convincing evidence was not clearly erroneous.

Termination is appropriate pursuant to MCL 712A.19b(3)(j) if the court finds by clear and convincing evidence that "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent." "[A] parent's failure to comply with the terms and conditions of his or her service plan is evidence that the child will be harmed if returned to the parent's home." *In re White*, 303 Mich App 701, 711; 846 NW2d 61 (2014). The harm can be either physical or emotional. *In re Hudson*, 294 Mich App 261, 268; 817 NW2d 115 (2011).

It is abundantly clear from the record that respondent has been battling a chronic substance abuse problem for years and that this problem has been detrimental to her ability to parent the children. The record suggests that respondent attained sobriety during the three months preceding the termination hearing, and this achievement warrants praise. However, this three-month period followed nearly a year during which respondent routinely tested positive for methamphetamine and heroin. Likely as a result of this addiction, she wholly failed to comply with the services provided her during that period. While sustaining sobriety for three months is a good start, the trial court did not err by being unconvinced that she could permanently refrain from falling back into her pattern of substance abuse. Furthermore, we cannot reasonable dispute that young children in the care of a person using methamphetamine and heroine are at risk of being harmed. In addition, based on respondent's substance abuse history, without a longer period of success in recovery a reasonable likelihood remained that respondent would fall back into substance abuse. Therefore, the trial court did not err by finding that there was a reasonable likelihood that the children would be harmed if returned to respondent.

In conclusion, the trial court did not clearly err by finding that at least one ground for termination of respondent's parental rights was proved by clear and convincing evidence.

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ Noah P. Hood
/s/ Allie Greenleaf Maldonado